**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JEROME A. WILLIAMS,

　　　　　*Plaintiff-Appellant,*

　　　　　v.

JON OZMINT, Director SCDC et al.
Agency; OFFICER JOHNSON,
contraband et al.; WARDEN WILLIE
L. EAGLETON, Warden; L. T.
GRAHAM,

　　　　　*Defendants-Appellees.*

No. 11-6940

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
G. Ross Anderson Jr., Senior District Judge.
(3:08-cv-04139-JRM)

Argued: March 19, 2013

Decided: May 15, 2013

Before SHEDD, DAVIS, and KEENAN, Circuit Judges.

---

Affirmed in part and dismissed in part by published opinion.
Judge Keenan wrote the opinion, in which Judge Shedd concurred. Judge Davis wrote a separate opinion concurring in
the judgment.

## COUNSEL

**ARGUED:** Kirsten Elena Small, NEXSEN PRUET, Green-ville, South Carolina, for Appellant. Andrew Lindemann, DAVIDSON & LINDEMANN, PA, Columbia, South Carolina, for Appellees. **ON BRIEF:** G. Murrell Smith, Jr., Steven B. Johnson, LEE, ERTER, WILSON, HOLLER & SMITH, LLC, Sumter, South Carolina, for Appellees.

## OPINION

BARBARA MILANO KEENAN, Circuit Judge:

These claims brought under 42 U.S.C. § 1983 raise the issue whether certain actions taken by South Carolina prison officials after an inmate's suspected receipt of contraband, including suspension of the inmate's visitation privileges for two years, violated his constitutional rights. We conclude that the prison warden who imposed the challenged actions is shielded by qualified immunity from the inmate's claim for monetary damages because, under the facts presented here, the inmate did not have a clearly established constitutional right to visitation. We also hold that because the inmate's visitation privileges already have been restored, his request for injunctive relief must be dismissed as moot. Accordingly, we dismiss the appeal in part as moot, and we affirm the judgment of the district court in all other respects.

### I.

Jerome Williams is an inmate serving a life sentence at Evans Correctional Institution in South Carolina. The facts underlying Williams' claims occurred on March 31, 2007, when Williams met with a visitor, Marilyn Massey, in the prison visitation room.[1]

---

[1]With respect to the visitation claims in this appeal, we view the facts in the light most favorable to Williams as the non-moving party. *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 119 (4th Cir. 2011).

Officer Johnson, who was assigned to the Contraband Unit at the prison, monitored the visitation room on that date, including the interaction between Williams and Massey. During Williams' visit with Massey, Officer Johnson observed Massey pass suspected marijuana to Williams. Johnson also thought that he saw Williams place the suspected contraband material in his pants before proceeding to walk toward the restroom.

Several officers, including Johnson, intercepted Williams. The officers informed Williams that he was suspected of having received contraband from Massey, and they escorted Williams to a separate area to be "strip searched." Massey was escorted from the premises.

The officers did not find any contraband material on Williams' person during the strip search. However, before the strip search was conducted, Johnson saw Williams place something in his mouth and swallow immediately. As a result, the officers placed Williams in a "dry cell," a cell without running water, for a period of 72 hours. The officers searched Williams' excrement for evidence of the suspected marijuana, but found none.

Williams later was transferred to the "Special Management Unit" where he was held in disciplinary confinement a little over two months. Williams was not charged with a disciplinary offense, and he alleges that "no finding was ever made that [he] possessed contraband (or violated any other prison rule)."

On April 4, 2007, Warden Willie Eagleton of Evans Correctional Institution (the warden) informed Williams that his privileges to see visitors were suspended for two years.[2] The notice stated that Williams' visitation was suspended "effec-

---

[2]The warden's additional action suspending Massey's visitation privileges for two years is not at issue in this case.

tive March 31, 2007, through March 20, 2009," because he "was observed receiving contraband from [his] visitor and placing it in [his] pants." The notice also stated that, while Williams was not found guilty of a crime or a disciplinary offense as a result of his conduct, "agency policy provides that action may be taken by the warden regarding rules violations in the visitation room."

In December 2008, Williams filed a pro se complaint in a South Carolina state court against Jon Ozmint, Director of the South Carolina Department of Corrections, the warden, and two prison guards, Johnson and Lieutenant Graham (collectively, the defendants). Williams alleged several constitutional violations relating to the conditions of his confinement, claimed excessive force by prison officials, and, as relevant here, challenged the suspension of his visitation privileges in the absence of being found with contraband or being charged with a disciplinary offense. On the basis of these alleged violations, Williams sought: (1) monetary relief; (2) restoration of "visitation" and "all privileges;" and (3) "any other relief that seems just, and proper."[3] The defendants timely removed the action to federal district court.[4]

After discovery, the defendants filed a motion for summary judgment. Adopting the magistrate judge's recommendation, the district court denied the defendants' request for summary judgment on Williams' claim of excessive force, but awarded summary judgment to the defendants on all the remaining claims. On the visitation privileges claim, the district court awarded summary judgment on the ground that prisoners do not have a constitutional right to visitation.

---

[3]Williams also sought various forms of relief to which he plainly was not entitled, such as being released on parole or having criminal charges brought against the defendants.

[4]The defendants removed this action on the basis of federal question jurisdiction, 28 U.S.C. § 1331.

The district court appointed counsel for Williams on the excessive force claim brought against Johnson. That claim was tried before a jury, which returned a verdict in favor of Johnson. The district court entered final judgment in favor of all the defendants. Williams filed a timely notice of appeal.[5]

## II.

We review a district court's award of summary judgment de novo. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Summary judgment is appropriate when the record does not disclose a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Couch v. Jabe*, 679 F.3d 197, 200 (4th Cir. 2012); Fed. R. Civ. P. 56(a).

We liberally construe Williams' pro se complaint, which raises certain civil rights issues. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). However, liberal construction does not require us to attempt to "discern the unexpressed intent of the plaintiff," but only to determine the actual meaning of the words used in the complaint. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc).

## A.

Williams argues that the two-year suspension of visitation privileges, which was imposed without a hearing or a finding that he actually possessed contraband, violated his First Amendment right to association, his Fourteenth Amendment right to procedural due process, and his Eighth Amendment right to be free from cruel and unusual punishment.[6] Although

---

[5]Williams raised various issues on appeal in his pro se brief, including challenges to the jury verdict and the district court's award of summary judgment. We appointed appellate counsel to Williams on the issue whether prisoners have a constitutionally protected right to visitation.

[6]The parties agree that the warden is the only proper defendant regarding Williams' visitation claim.

he concedes that the rights of prison inmates are subject to substantial restrictions, Williams nevertheless argues that incarceration does not extinguish a prisoner's "qualified right to visitation."

Williams initially contends that a remand to the district court is necessary for further discovery regarding the prison policy underlying the suspension of his visitation privileges. He asserts that until such facts are developed, adjudication of his constitutional claims will be impossible because this Court will be unable to determine whether the prison's policy advances legitimate penological objectives and is applied consistently.

We find no merit in this argument. Discovery and remand are not required for this purpose because Williams has not sought declaratory relief or otherwise shown that such information is material to the resolution of his claims.

We therefore turn to consider the district court's award of summary judgment on Williams' claim that the warden's action suspending Williams' visitation privileges for two years violated his constitutional rights. Under the doctrine of qualified immunity, government officials are provided certain protections from liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Meyers v. Baltimore Cnty., Md.*, ___ F.3d ___, 2013 WL 388125, at *4 (4th Cir. Feb. 1, 2013). Qualified immunity extends to protect officials "who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry*, 652 F.3d at 531.

A qualified immunity inquiry involves two steps. A court generally considers first, whether a constitutional violation occurred, and second, when the court finds such a violation, whether the right violated was "clearly established" at the time of the official's conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555

U.S. 223 (2009); *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012).

In performing this analysis, however, a court is not required to consider the above two steps in any particular order. A court may exercise its discretion to determine which of the two steps of the qualified immunity analysis "should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. In the present case, we exercise our discretion to determine first whether Williams had a clearly established constitutional right to visitation at the time of the warden's decision.

Williams does not cite any case, or combination of cases, from this Court, the Supreme Court, or the highest court in South Carolina, that clearly establishes a constitutional right to visitation in prison grounded in the First, Eighth, or Fourteenth Amendments. *See Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987) (to overcome qualified immunity, the asserted right must be defined with particularity). Having failed to do so, Williams also necessarily has failed to identify any authority establishing a right to such visitation that could not be restricted by prison officials under the facts presented here. The absence of controlling constitutional authority in this regard thus forecloses Williams' argument that, upon application of an objective standard, the warden should have been aware that his conduct violated a clearly established constitutional right. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (ordinarily, courts need only look to "the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose," to determine whether the asserted right was clearly established) (citation omitted).

This Court considered a restriction of prison visitation in *White v. Keller*, in which we summarily affirmed a district court decision rejecting a constitutional challenge to a 90-day restriction on prisoner visitation imposed after some inmates

were found with certain contraband. 438 F. Supp. 110, 115 (D. Md. 1977), *aff'd*, 588 F.2d 913 (4th Cir. 1978) (per curiam). Like Williams in the present case, the plaintiffs in *White* challenged the restrictions imposed on grounds including an alleged violation of their rights under the First Amendment. They also asserted that the prison policy violated their procedural due process rights, including their alleged entitlement to written notice prior to the suspension of visitation and the opportunity to contest the action. *Id.* at 113.

The district court considered these issues in *White* and held, in part, that "there is no constitutional right to prison visitation, either for prisoners or visitors."[7] *Id.* at 115. The district court rejected the plaintiffs' First Amendment challenges, and also found no merit in the plaintiffs' arguments that they were denied "procedural guarantees" conferred by the state, and that the prison did not follow its own regulations. *Id.* at 120-21. In a published opinion, we affirmed the district court's decision without elaboration, stating that the decision was "correct."[8] 588 F.2d at 914.

We also observe that, although the Supreme Court has considered issues concerning the visitation rights of prisoners in several cases, none of those cases materially advances Williams' claims. The Supreme Court held in *Block v. Rutherford* that "the Constitution does not require" pretrial detainees to be allowed "contact visits," when administrators have exercised their sound discretion in determining that such visits

---

[7]We note that the district court in *White* did not rest its decision solely on the basis that prisoners do not have a constitutional right to visitation in prison. The court further stated that, "[i]n any event, whether visitation is a right or not, it is at best a non-fundamental right, and hence may not only be restricted, but may be restricted by other than the least drastic means." 438 F. Supp. at 118.

[8]On an issue related to visitation in prison, we also have held that an inmate does not have a constitutional right to "physical contact" with his family. *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam).

"will jeopardize the security of the facility." 468 U.S. 576, 589 (1984). And in *Kentucky Department of Corrections v. Thompson*, the Court rejected the argument that any particular visitor has a due process right to prison visitation. 490 U.S. 454, 461 (1989).

More recently, in *Overton v. Bazzetta*, the Supreme Court considered the issue whether certain prison regulations in Michigan restricting visitation rights violated the First, Eighth, or Fourteenth Amendments. 539 U.S. 126, 129-30 (2003). There, the prisoners challenged a regulation imposing a two-year ban on visitation for prisoners who committed multiple substance-abuse violations, which restriction could be lifted only in the warden's discretion. *Id.* at 130.

The Court in *Overton* noted that "certain kinds of highly personal relationships" are protected by the First Amendment, but stated that "[t]his is not an appropriate case for further elaboration of those matters." *Id.* at 131 (citation omitted). The Court further explained that "[a]n inmate does not retain rights inconsistent with proper incarceration," and "*freedom of association is among the rights least compatible with incarceration.*" *Id.* (emphasis added). The Court upheld the challenged regulations restricting visitation because they served "a rational relation to legitimate penological interests," namely, "deterring the use of drugs and alcohol within the prisons," as well as "induc[ing] compliance with the rules of inmate behavior." *See id.* at 132, 134.

The Court also rejected for the same reasons the prisoners' contention that the two-year restriction on visitation constituted cruel and unusual punishment under the Eighth Amendment. *Id.* at 136-37. However, the Court acknowledged that its Eighth Amendment analysis might differ if visitation privileges were denied "permanent[ly]," or for a "much longer period," or "in an arbitrary manner to a particular inmate." *Id.* at 137.

The length of the suspension imposed on Williams in the present case is identical to the two-year period at issue in *Overton*. And, significantly, the record before us does not show that the warden suspended Williams' visitation privileges arbitrarily, in the absence of any evidence that he received contraband on this or any prior occasions.[9]

Like the Supreme Court in *Overton*, we need not determine the issue whether, by virtue of their incarceration, prisoners may be deprived of all associational rights in all instances, nor need we define the boundaries of any such associational rights.[10] Qualified immunity serves to protect officers from suit for money damages in cases involving "gray areas" of constitutional rights or the violation of such asserted rights. *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Indeed, a rejection of qualified immunity requires "that in the light of pre-existing law the unlawfulness [of a defendant's actions]

---

[9]Williams also has not shown that the warden violated a clearly established procedural due process right under *Sandin v. Conner*, which provides that liberty interests created by a State are protected by the Due Process Clause if their denial is an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See* 515 U.S. 472, 484 (1995). Williams asserts, without any support, that "a two-year suspension of visiting privileges in the absence of a disciplinary violation is atypical and significant," and that his visitation privileges were suspended without cause. However, as we have explained, Williams' privileges were not suspended arbitrarily or "without cause," but rather following a prison officer's observation that Williams received contraband. Moreover, the Court in *Overton* held that the two-year withdrawal of visitation was not a "dramatic departure from accepted standards for conditions of confinement," *id.* at 137 (citing *Sandin*, 515 U.S. at 485), and Williams does not cite, nor do we find, any controlling authority compelling a contrary conclusion on this record.

[10]Williams correctly observes that the Court in *Overton* declined the opportunity to declare that prison inmates have no associational rights whatsoever. However, the Court explained that it was not required to decide that "any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners." 539 U.S. at 131-32. Thus, the statement identified by Williams cannot be construed as affirmatively establishing that prisoners have such a right.

*must be apparent*." *Anderson*, 483 U.S. at 640 (emphasis added). In view of controlling precedent, and upon application of the above standards, we conclude that the warden's action suspending Williams' visitation privileges for two years did not violate a clearly established constitutional right. Accordingly, we hold that the warden is entitled to qualified immunity on Williams' claim for monetary damages arising from the suspension of his visitation privileges.[11]

### B.

The defense of qualified immunity has no bearing, however, on claims for prospective court action such as injunctive relief. *Rowley v. McMillan*, 502 F.2d 1326, 1331 (4th Cir. 1974); *Sudler v. City of New York*, 689 F.3d 159, 177 (2d Cir. 2012). Accordingly, we proceed to address Williams' claim for injunctive relief.

In asking that his "visitation" and "all privileges" be restored, Williams seeks injunctive relief from the federal courts. However, by its terms, the suspension of Williams' visitation privileges expired on March 20, 2009. Indeed, counsel acknowledged at oral argument in this appeal that Williams' visitation privileges have been restored.

Williams argues, nonetheless, that his claims are not moot because he remains incarcerated and, therefore, remains subject to a policy "that permits the warden . . . to deprive Williams of visitation rights without any evidence of wrongdoing." According to Williams, his situation falls within the exception to the mootness doctrine because his circumstance is capable of repetition yet evading review. We disagree with Williams' arguments.

---

[11]In view of our conclusion that the warden did not violate clearly established law, we need not address the first step of the *Saucier* analysis, namely, whether a constitutional violation occurred. *See* 533 U.S. at 201.

Mootness principles derive from the requirement in Article III of the Constitution that federal courts may adjudicate only disputes involving "a case or controversy." *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 370 (4th Cir. 2012) (citing *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)). The case-or-controversy requirement applies to all stages of a federal case. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-79 (1990). "[I]t is not enough that a dispute was very much alive when [the] suit was filed," but the parties must continue to have a "particularized, concrete stake" in the outcome of the case through all stages of litigation. *Id.* This constitutional requirement is of paramount importance, because the federal courts have "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citation omitted).

A court is deprived of jurisdiction over a case when the case becomes moot. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983); *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013). Therefore, we address mootness, irrespective whether the issue was raised by the parties, when our jurisdiction is "fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009); *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002).

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). A change in factual circumstances can moot a case on appeal, such as when the plaintiff receives the relief sought in his or her claim, *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011), or when an event occurs that makes it impossible for the court to grant any effectual relief to the plaintiff, *Church of Scientology*, 506 U.S. at 12. We have explained that "[m]ootness questions often arise in cases involving inmate challenges to prison policies or condi-

tions," because by the time such a suit is ready for adjudication, the challenged practice or policy may no longer affect the prisoner. *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007).

A claim may be mooted "when the claimant receives the relief he or she sought to obtain through the claim," because the court no longer "has [ ] effective relief to offer." *Dunlap*, 290 F.3d at 197 (citations omitted). This circumstance applies in the present case, because Williams already has received the restoration of his visitation privileges that he requested in his complaint. Accordingly, his claim for injunctive relief is moot.[12] *See Martin v. Snyder*, 329 F.3d 919, 920 (7th Cir. 2003) (holding that inmate's claim for injunctive relief to see a particular visitor was mooted when the warden reinstated her visitation privileges); *White*, 438 F. Supp. at 113 (holding that "[t]he claims for injunctive relief of the named plaintiffs in the visitor class are and have been moot since the restoration of their visiting privileges").

Our conclusion is not altered by Williams' contention that this case falls within the exception to the mootness doctrine of cases "capable of repetition yet evading review." In Williams' view, because he remains incarcerated as an inmate of the South Carolina prison system, he still is subject to a policy that "permits the warden of an institution to deprive Williams of visitation rights without any evidence of wrongdoing." We are not persuaded by this argument.

Courts recognize an exception to the mootness doctrine when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party

---

[12]Because Williams' additional request raised in his pro se complaint for restoration of "all privileges" is inherently vague, we do not consider it here. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (courts are "not required to fashion" arguments for a pro se litigant).

will be subject to the same action again." *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011) (quoting *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). However, courts also have cautioned that this is a narrow exception, which is limited to the "exceptional situation[ ]." *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *see also Ringo v. Lombardi*, 677 F.3d 793, 798 (8th Cir. 2012); *Libertarian Party of N.H. v. Gardner*, 638 F.3d 6, 12 (1st Cir. 2011). Accordingly, a party seeking to invoke this exception to the mootness doctrine bears the burden of showing its application. *Incumaa*, 507 F.3d at 289 (citing *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006)).

Williams has not met his burden here. His argument fails for two related reasons. First, Williams has not shown that he would be subjected again to the alleged deprivation of rights that occurred in this instance. *See Lux*, 651 F.3d at 401 (exception requires "a reasonable expectation that the *same complaining party* will be subject to the same action again") (emphasis added). There is no indication that the warden deprived Williams of visitation privileges in the absence of any evidence that Williams received contraband on this or any prior occasion.

Second, apart from vague and unsubstantiated allegations that the defendants "targeted" him merely to harass him and his family, there is nothing in the record to indicate that Williams' visitation privileges will be suspended again in the absence of culpable conduct on his part. Thus, Williams' argument that his claim is capable of repetition rests either on mere speculation, or on the possibility that he will violate prison rules in the future. *See Incumaa*, 507 F.3d at 288-89 (declining to invoke exception to mootness doctrine when prisoner was removed from maximum security ward, and only way he would be subjected to challenged policies of that ward were if he violated prison rules in the future); *see also Cox v. McCarthy*, 829 F.2d 800, 804 n.3 (9th Cir. 1987) (explaining that "courts are in general still more reluctant to invoke the

capable-of-repetition doctrine when the possibility of recurrence for the plaintiff depends on his own wrongdoing") (citation omitted). Therefore, we conclude that the narrow exception to the mootness doctrine claimed by Williams is not applicable in this case.

## C.

We also address the assertion of Williams' counsel at oral argument that Williams' complaint, fairly construed, raised a claim for declaratory relief. We disagree with this argument.

When we construe Williams' pleadings liberally, as we must, *Erickson*, 551 U.S. at 94, our review of his complaint does not reveal that Williams sought relief in the form of a declaratory judgment that the South Carolina Department of Corrections' visitation policy is unconstitutional. Instead, Williams plainly sought monetary relief in the amount of $250,000, and injunctive relief ordering that his "visitation" and "all privileges" be "restored." And, as noted above, Williams also sought various forms of relief to which he clearly was not entitled, namely, that he be granted parole or transferred to a minimum security institution, and that either criminal charges be instituted against the defendants or they be removed from their positions at the prison. At the conclusion of this list, Williams sought "any other relief that seems just and proper."

We long have recognized that, despite our expansive consideration of the pleadings of pro se litigants, district courts "cannot be expected to construct full blown claims from sentence fragments," and appellate courts should not "permit those same fleeting references to preserve questions on appeal." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Of necessity, our focus remains on discerning the expressed intent of the litigant. *See Laber*, 438 F.3d at 413 n.3. Thus, although Williams need not have pleaded verbatim that he sought "declaratory relief," he nevertheless was

required to express in his complaint a challenge to the validity of the prison's policy. Accordingly, his "catch-all" request for "other relief" was insufficient to preserve a claim to declaratory relief.

## D.

Williams raises several additional arguments on appeal, none of which has any merit. First, Williams challenges the jury verdict in favor of Johnson on the excessive force claim. However, Williams merely asserts in a conclusory manner that Johnson used excessive force, and does not raise specific allegations of error on the part of the district court. Thus, Williams has not met his burden of demonstrating a substantial question warranting the production of a transcript at government expense. *See* Fed. R. App. P. 10(b); 28 U.S.C. § 753(f). Accordingly, we decline to review the jury verdict. *See Keller v. Prince George's Cnty.*, 827 F.2d 952, 954 n.1 (4th Cir. 1987).

Second, we also reject Williams' claim of ineffective assistance of trial counsel assigned by the district court to represent Williams in his excessive force claim tried to a jury. Counsel was not constitutionally mandated in this action brought under 42 U.S.C. § 1983.[13] *See, e.g.*, *Taylor v. Dickel*, 293 F.3d 427, 431 (8th Cir. 2002); *Stanciel v. Gramley*, 267 F.3d 575, 580-81 (7th Cir. 2001); *Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir. 1985) (per curiam).

## III.

In conclusion, we dismiss as moot Williams' claim for injunctive relief regarding his asserted visitation rights, and we affirm the district court's judgment in all other respects.

---

[13]Even after affording Williams' pro se brief liberal construction, we conclude that Williams has failed to explain or develop his remaining arguments. We therefore decline to address those issues.

*AFFIRMED IN PART AND
DISMISSED IN PART*

DAVIS, Circuit Judge, concurring in the judgment:

We assigned appellate counsel in this case primarily to present argument on the question of whether the district court erred in rejecting Appellant's assertion that the Warden's summary imposition of a two-year suspension of visitation was consistent with one or more constitutional protections retained by state inmates. As the majority opinion illustrates, there is scant legal authority supporting the contention that the Warden's discretion in this area is so constrained. Still, one is left uncomfortable with the outcome. I have never run a prison. I have no idea, beyond untutored instinct and speculation, whether imposition of such a sanction on an inmate serving a life sentence, such as Appellant, is genuinely consistent with legitimate and sensible penological "best practices" or whether, instead, it worsens, rather than improves, the safety and security of the prison environment, through the generation of simmering resentments and increased friction between jailers and their charges. If the Warden can suspend Appellant's visitation for two years merely on the say-so of a correctional officer, can he suspend it for three years? For four? Forever? And if the answer to one of the latter queries is no, then where is the line?

To my untrained mind, a prolonged separation of an inmate from family, including perhaps children, or from whatever supportive community he has left behind outside the walls that wishes to maintain minimal contact while he pays his debt to society, raises a real potential for serious infringement on the residuum of constitutionally protected liberty one supposes inmates retain.[1] Surely, moreover, in the mine run of

---

[1] Importantly, this case concerns the suspension of an *inmate's* visitation, not the suspension of visitation for a particular *visitor* who violates prison rules.

cases, visitation furthers whatever is left in the American criminal justice system that passes for attempts at rehabilitation. According to information provided on their website, the officials who manage the South Carolina Department of Corrections appear to embrace this notion.[2] *But see* 18 U.S.C. § 3582(a)("The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that *imprisonment is not an appropriate means of promoting correction and rehabilitation*.")(emphasis added).

That said, the reasoning of the majority appears unassailable on this record. To be sure, qualified immunity from a damages remedy to one side, the majority could permissibly interpret and construe Appellant's hand-drawn, pro se complaint to have sought injunctive and declaratory relief (seeking, as it does, "such other and further relief" as may be appropriate), and thereby avoid mooting the case. *See* Federal Rule of Civil Procedure 54(c);[3] *and see* 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2664, at 183 (3d ed. 1998).[4] But there is no

---

[2] *See* South Carolina Department of Corrections, *http://www.doc.sc.gov/family/visitation.jsp* (last visited April 26, 2013)("Visitation is an important component of the rehabilitation process and is conducted in the least restrictive manner possible while meeting requirements of safety, security, classification, and space availability.").

[3] **Demand for Judgment; Relief to Be Granted**. A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. *Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.*

Fed. R. Civ. P. 54(c)(emphasis added).

[4] "Rule 54(c) also has been utilized when the court awards a different type of relief from that demanded in the complaint. For example, with the merger of law and equity, specific or injunctive relief may be awarded even though damages were prayed for and vice-versa. By the same token, a party may be awarded declaratory relief, even though the party has not demanded it . . . " (footnotes omitted).

requirement that the court do so. In any event, I agree that, for now at least, decisions as to how best to act on *suspicion* of contraband delivery to inmates during visitation (in contrast to *proof* of such delivery) remain South Carolina's call, unfettered by constitutional proscriptions, at least in the absence of sanctions of a greater magnitude, litigated in a more timely fashion, than has occurred here. Accordingly, I concur in the judgment.