**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1131**

BRIEANNA KRISTEN GUNSAY; KRISTEN PETIT GUNSAY,

       Plaintiffs – Appellants,

    v.

B. ROBERT MOZAYENI, M.D.; SGT. TROY PLUMMER, #6137, Individually and in his official capacity as a Montgomery County Sheriffs Deputy; LT. GREG HENDERSON, Individually and in his official capacity as a Montgomery County Sheriff's Deputy; DEPUTY KEVIN STULTZ, #6194, Individually and in his official capacity as a Montgomery County Sheriffs Deputy; METIN ATA GUNSAY; LINDA LEE MOYER WILLIAMS,

       Defendants – Appellees,

    and

DEPUTY WADE, Individually and in his official capacity as a Montgomery County Sheriffs Deputy; SPECIAL AGENT DAN BALOCKI, Individually and in his official capacity as a Special Agent with the State Department's Diplomatic Security Service; UNITED STATES OF AMERICA; MARSHALL JOHN DOE 1, Individually and in his/her official capacity as a United States Marshall; MARSHALL JOHN DOE 2, Individually and in his/her official capacity as a United States Marshall,

       Defendants.

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:14−cv−01347−JFM)

Argued:  May 11, 2017

Decided:  June 21, 2017

Before WILKINSON, KING, and WYNN, Circuit Judges.

Affirmed as modified by unpublished per curiam opinion.

**ARGUED:** Gregory L. Lattimer, LAW OFFICES OF GREGORY L. LATTIMER, Washington, D.C., for Appellants. Jason L. Levine, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Annapolis, Maryland; Molissa Heather Farber, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland; David Keith Felsen, FELSEN & SARGENT, LLC, Rockville, Maryland; Clarence Paul Smith, LAW OFFICE OF C. PAUL SMITH, Frederick, Maryland, for Appellees. **ON BRIEF:** Brian E. Frosh, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees Greg Henderson and Kevin Stultz. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Alex S. Gordon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee Troy Plummer.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kristen Gunsay, and her daughter Brieanna Gunsay (together, "Plaintiffs"), appeal the dismissal of their claims under the Fourth Amendment and Maryland state law relating to alleged injuries arising from their encounter with various state and federal law enforcement officers. That encounter arose from a long-running dispute between Kristen and her ex-husband, Metin Gunsay, to obtain custody of their daughter, Brieanna. Having dismissed all of Plaintiffs' federal claims on qualified immunity grounds, the district court declined to exercise supplemental jurisdiction over Plaintiffs' pendent state-law claims and therefore dismissed those claims with prejudice. After careful review, we conclude that the district court did not reversibly err in dismissing Plaintiffs' claims, with the caveat that the district court should have dismissed Plaintiffs' state-law claims without prejudice. Accordingly, we affirm the judgment below but modify the district court's order to clarify that the dismissal of Plaintiffs' state-law claims is without prejudice.

## I.

### A.

The present action is the latest in a series of disputes between Kristen and Metin stemming from their divorce and custody clashes that have transcended international boundaries and drawn on the judicial resources of two countries and at least four state and federal jurisdictions. Because a full account of this convoluted history is unnecessary to resolve the case at hand, only those facts pertinent to the parties' present dispute are summarized below.

Kristen and Metin married in July 1988, and Kristen gave birth to Brieanna in June 1989. According to Kristen, Metin was physically and verbally abusive throughout their five-year marriage, which ended in divorce in July 1993. In the resulting divorce decree, a Utah court awarded Kristen full custody of Brieanna, with Metin agreeing to certain limited visitation rights. In the initial years following the divorce, the parties apparently abided by the terms of the Utah court's judgment without major incident.

In 1997, however, Kristen moved with Brieanna from Utah to British Columbia, Canada. This departure prompted an increasingly bitter custody battle, resulting in numerous—and conflicting—orders from Utah and British Columbia courts. By 2000, Kristen had obtained orders from the British Columbia courts awarding her permanent custody of Brieanna; barring Kristen or Metin from removing Brieanna from the province without prior court approval; and restraining Metin and his family from contacting Kristen or Brieanna or entering the city in which they lived. Throughout this period, Metin asserted that Kristen abducted Brieanna and maintained a public website dedicated to her return to Utah. To that end, Metin obtained orders from Utah courts awarding him sole custody of Brieanna; repudiating the contrary orders issued by the British Columbia courts; and holding Kristen in contempt of court.

Sometime later, Kristen and Brieanna—now an adult—moved from Canada to Maryland, where Brieanna began receiving specialized medical care to treat an unspecified "rare illness." J.A. 17. During the course of this treatment, Plaintiffs allege that Brieanna's treating physician, Dr. Robert Mozayeni, discovered Metin's website dedicated to Brieanna and contacted Metin to alert him to Brieanna's whereabouts. This

4

communication set in motion the events giving rise to the incident at the heart of this appeal.

On April 17, 2011, Metin phoned in a tip to the Montgomery County, Maryland, Sheriff's Office that Kristen would be at Mozayeni's office two days later and was wanted by Utah authorities. A review of relevant court records revealed two outstanding warrants authorizing Kristen's arrest—one issued by a Utah state court for felony custodial interference and perjury; and a second that appeared to be issued by the U.S. District Court for the District of Utah for unlawful flight to avoid prosecution.[1]

When Kristen and Brieanna arrived at Mozayeni's office on April 19, they were approached by as many as nine officers from multiple agencies, including the Montgomery County Sheriff's Office and the U.S. Marshal Service Capital Area Regional Fugitive Task Force. According to Plaintiffs, immediately after they parked, the officers approached their car with guns drawn, pointed their guns at Kristen's and Brieanna's heads, and ordered Kristen to exit the vehicle. With Metin and his mother, Linda Williams, looking on from a nearby patrol car, the officers then allegedly removed Kristen from the vehicle and forced her to the ground in order to place her under arrest.

After removing Kristen from the vehicle, and with their guns still drawn, the officers directed Brieanna to exit the vehicle. According to Brieanna, the officers—with weapons

---

[1] The latter of these warrants mistakenly indicates that it was issued by the federal district court for the "Central District of Utah," as opposed to the "District of Utah, Central Division." J.A. 508. Although Plaintiffs argued below that this apparent typographical error rendered the warrant invalid, they concede on appeal that the warrant was at least facially valid at the time of the challenged altercation.

5

now holstered—told her not to move while they handcuffed Kristen and removed her from the scene. Thereafter, Brieanna claims that the officers repeatedly "moved" her two or three inches at a time before encircling her and encouraging her to speak with Metin and Williams. J.A. 411. After refusing to speak with Metin, Brieanna briefly, and reluctantly, spoke with Williams before being released. Brieanna alleges that she remained at the scene for approximately an hour after her mother's arrest.

B.

After filing a series of lawsuits in Maryland state court, in April 2014, Plaintiffs brought this action against Metin, Williams, and Mozayeni (collectively, the "Private Defendants"), as well as the Montgomery County Sheriff's Office and three of its employees—Sergeant Troy Plummer ("Sergeant Plummer"), Lieutenant Greg Henderson ("Lieutenant Henderson"), and Deputy Kevin Stultz ("Deputy Stultz," and collectively with the Sheriff's Office, Sergeant Plummer, and Lieutenant Henderson, the "Public Defendants").

Against the Public Defendants, Plaintiffs alleged various causes of action, including: (1) unlawful seizure, false arrest without probable cause, false imprisonment, and excessive force, in violation of their rights under the Fourth and Fifth Amendments and the Maryland constitution; (2) conspiracy to violate their civil rights, in violation of 42 U.S.C. § 1985; (3) false arrest under Maryland law; and (4) intentional infliction of emotional distress under Maryland law. Plaintiffs included the Private Defendants in their civil conspiracy and intentional infliction of emotional distress claims and further allege that Mozayeni violated Brieanna's right to privacy under Maryland law.

6

On January 13, 2015, the district court dismissed nearly all of Plaintiffs' claims on motions from the various defendants. In particular, the district court concluded that the claims against the Private Defendants were barred on res judicata and collateral estoppel grounds by the earlier state court proceedings between the parties. Those proceedings, which involved substantially similar allegations, ultimately resulted in the dismissal of Brieanna's claims against Metin and Williams, as well as both Plaintiffs' claims against Mozayeni. The state court dismissed Plaintiffs' claims against Mozayeni without prejudice pursuant to a provision of Maryland law requiring medical malpractice claims to be submitted to arbitration before being filed in state or federal court.

As to the claims against the Public Defendants, the district court began its analysis by explaining that the officers were entitled to qualified immunity in connection with their efforts to execute warrants issued for Kristen's arrest. Offering no further explanation, the district court dismissed each of Kristen's federal claims against the officers. By contrast, finding "no justification for [the officers] to point weapons at Brieanna . . . or to detain her until she had spoken to" her relatives, the district court allowed Brieanna's claims to proceed. J.A. 349.

Citing various errors in the district court's analysis, Plaintiffs then moved to amend or alter the district court's judgment dismissing the bulk of their claims. Although the district court ultimately denied their motion, the court clarified its earlier holding by noting that Kristen's state-law claims against Metin and Williams were not precluded on res judicata grounds. Nevertheless, the court declined to exercise supplemental jurisdiction

7

over those claims because they raised novel issues of Maryland law and implicated the state's unique interest in domestic matters.

Following discovery on Brieanna's surviving federal claims, Public Defendants moved for summary judgment on grounds of qualified immunity. On January 12, 2016, the district court granted the Public Defendants' motion and dismissed all of Brieanna's remaining claims. This timely appeal followed.

II.

On appeal, Plaintiffs do not contest the dismissal of their federal civil conspiracy claims. However, Plaintiffs argue that the district court erred in dismissing their remaining federal claims against the Public Defendants. Plaintiffs further argue that the district court abused its discretion in declining to exercise supplemental jurisdiction over their remaining state-law claims. For the reasons that follow, we disagree.

A.

Turning first to Plaintiffs' federal claims, as this action has progressed, Plaintiffs have offered a variety of bases for relief under the Fourth and Fifth Amendments stemming from their alleged interaction with the Public Defendants. At this stage, however, Plaintiffs proceed primarily on the theory that the Public Defendants used excessive force in arresting Kristen and encouraging Brieanna to speak with her estranged relatives.

We apply an objective "reasonableness" standard in reviewing excessive force claims under the Fourth Amendment. *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (citing *Graham v. Connor,* 490 U.S. 386, 395, 397 (1989)). Under this standard, "[t]he question is whether a reasonable officer in the same circumstances would have

8

concluded that a threat existed justifying the particular use of force." *Id.* This test "is not capable of precise definition or mechanical application" but instead "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (internal quotation marks omitted); *see also Pegg v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017).

However, even when an officer's conduct runs afoul of the Fourth Amendment, "[q]ualified immunity shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 907 (4th Cir. 2016) (internal quotation marks omitted). In determining whether a law enforcement officer is entitled to qualified immunity, we engage in a two-pronged inquiry. *Tolan v. Cotton*, — U.S. —, 134 S. Ct. 1861, 1865 (2014) (per curiam). The first prong "asks whether the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a federal right." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). The second "asks whether the right was clearly established" at the time of the alleged violation. *Id.* This court may analyze these two questions in "the order . . . that will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). With these principles in mind, we first address Kristen's excessive force claim and then address Brieanna's claim.

1.

Because the district court dismissed Kristen's excessive force claim under Rule 12(b)(6), we review that dismissal de novo, assuming as true all factual allegations set out in the Amended Complaint and drawing all reasonable inferences in Plaintiffs' favor. *Hamilton v. Pallozzi*, 848 F.3d 614, 620 (4th Cir. 2017). For present purposes, we therefore assume that the officers at the scene approached Kristen's car with their guns drawn and pointed at Kristen, removed Kristen from the car, forced her to the ground, and arrested her pursuant to two outstanding felony warrants, one of which was for evading arrest.

Regardless of whether the officers' actions violated Kristen's rights under the Fourth Amendment—a question that we need not, and thus do not, answer—the Public Defendants are entitled to qualified immunity because Plaintiffs fail to identify any decision, or combination of decisions, by the Supreme Court, this Court, or the highest court in Maryland, clearly establishing that, at the time of the incident, the officers' actions violated the Fourth Amendment. *See Williams v. Ozmint*, 716 F.3d 801, 806 (4th Cir. 2013) (affirming award of qualified immunity where plaintiff failed to "cite any case, or combination of cases" that clearly established that challenged conduct violated Constitution). Accordingly, the district court did not reversibly err in awarding the Public Defendants qualified immunity on Kristen's excessive force claim.

2.

Turning to Brieanna's excessive force claim, we also review the decision to grant summary judgment to the Public Defendants on that claim de novo, applying the same legal standards as the district court. *Roland v. U.S. Citizenship & Immigration Servs.*, 850 F.3d

10

625, 628 (4th Cir. 2017). "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Armstrong*, 810 F.3d at 895–96 (internal quotation marks omitted).

Based on information obtained during discovery, Plaintiffs concede that the named Public Defendants did not point their weapons at Brieanna or order her from the car. Appellants' Br. at 18. Nonetheless, Plaintiffs contend that the named defendants "were at the scene" when unnamed officers removed Brieanna from her mother's car and asked Brieanna to speak with her grandmother. *Id.* at 18–19. To that end, Plaintiffs now rely primarily on a "bystander" theory of liability in advancing Brieanna's claims against the Public Defendants.

Under the Fourth Amendment, bystander liability is "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416–17 (4th Cir. 2014) (internal quotation marks omitted). To succeed under a bystander theory of liability, "a plaintiff must demonstrate that a law enforcement officer (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act." *Id.* at 417 (alterations and internal quotation marks omitted).

Here, Plaintiffs argue that, "even if [the named Public Defendants] could not be identified by Brieanna as taking any specific act of wrongdoing, they could still be held liable under the theory of bystander liability." Appellants' Br. at 20. Specifically,

11

Plaintiffs point to language in their Amended Complaint alleging that these defendants "deprived *and/or allowed* plaintiffs to be deprived of" their Fourth Amendment rights. Appellants' Br. at 20 (quoting J.A. 23). The Public Defendants respond that Plaintiffs failed to plead any bystander liability claim. However, we have made clear that, at the pleading stage, plaintiffs are "not required to use any precise or magical words in their pleading" to state a bystander liability claim. *Stevenson*, 743 F.3d at 418. Under that liberal standard, Plaintiffs' allegation that the Public Defendants "allowed" Brieanna's Fourth Amendment rights to be violated is sufficient to alert the Public Defendants to this proposed alternative basis for relief. *See id.* at 419 (explaining that, based on the defendants' "undisputed presence at the scene of the altercation and the allegation that the officers 'allow[ed] to be committed . . . unreasonable seizure[s],' it requires no legal gymnastics or finagling" to read the plaintiffs' complaint as alleging a bystander liability claim (alterations in original)).

Nonetheless, we conclude that the district court did not err in awarding the Public Defendants qualified immunity on Brieanna's excessive force claim. Regarding Sergeant Plummer, in particular, it is undisputed that he was not present at the time the officers allegedly pointed their guns at Brieanna and Kristen, and that he left the scene soon after the other officers began speaking with Brieanna. Accordingly, Plaintiffs cannot demonstrate that Sergeant Plummer either knew of the allegedly excessive force used in relation to Brieanna or had an opportunity to prevent it, as required to establish a bystander liability claim. *See Thomas v. Holly*, 533 F. App'x 208, 221−24 (4th Cir. 2013) (vacating district court's denial of defendants' motions for summary judgment asserting qualified

immunity on bystander liability claims where plaintiff presented no evidence to refute defendants' testimony that they did not witness the alleged application of excessive force); *Smith v. Ray*, 409 F. App'x 641, 649 (4th Cir. 2011) (affirming grant of summary judgment to defendants on bystander liability claims where defendant officers arrived at the scene after the alleged use of excessive force).

Viewing the evidence in the light most favorable to Brieanna, Lieutenant Henderson and Deputy Stultz were in the immediate vicinity when the unnamed officers allegedly pointed their guns at Brieanna and moved her away from Kristen's car, and also were present during the unnamed officers' subsequent efforts to encourage Brieanna to speak with her relatives. But even assuming the unnamed officers' conduct violated the Fourth Amendment—again, a question that we need not, and thus do not, address—the Public Defendants are entitled to qualified immunity because Plaintiffs fail to identify any decision, or combination of decisions, by the Supreme Court, this Court, or the highest court in Maryland, putting Lieutenant Henderson and Deputy Stultz on notice that the officers' actions violated the Fourth Amendment. *See Williams*, 716 F.3d at 806.[2]

In sum, the undisputed facts establish that Sergeant Plummer is not liable under a bystander liability theory because he was not present at the time the officers allegedly

---

[2] To the extent that Brieanna's constitutional claim derives from Plaintiffs' allegation that she was subjected to false arrest during the alleged encounter, that claim is foreclosed under our precedent. Indeed, Plaintiffs point to no evidence that Brieanna's "freedom of action [wa]s curtailed to a degree associated with formal arrest." *United States v. Elston*, 479 F.3d 314, 319 (4th Cir. 2007). Similarly, even assuming the Public Defendants' efforts to encourage Brieanna to speak with her estranged relatives amounted to an unlawful seizure, she fails to provide any authority demonstrating that the officers' conduct violated clearly established law. *See Williams*, 716 F.3d at 806.

pointed their guns at Brieanna and Kristen and that Lieutenant Henderson and Deputy Stultz are entitled to qualified immunity. Accordingly, the district court did not reversibly err in dismissing Brieanna's federal claims against the Public Defendants.

B.

Having concluded that the district court did not err in dismissing Plaintiffs' constitutional claims, we likewise affirm the dismissal of Plaintiffs' related state-law claims. As a general matter, federal district courts have jurisdiction over state-law "claims that are so related to claims in [an] action within [their] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367.

However, courts may decline to exercise such jurisdiction when:

(1)     the state-law claim raises a novel or complex issue of state law,
(2)     the state-law claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3)     the district court has dismissed all claims over which it has original jurisdiction, or
(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* We review a district court's decision to decline to exercise supplemental jurisdiction for abuse of discretion. *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 203 (4th Cir. 1997); *see also ESAB Grp. v. Zurich Ins.*, 685 F.3d 376, 393 (4th Cir. 2012).

In this case, the district court declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims because, among other reasons, the state-law claims (1) "raise[d] novel or complex issues of Maryland law" and (2) "ar[o]se from a domestic dispute over which federal courts have traditionally declined (when possible) to exercise jurisdiction." J.A. at 364–65. When coupled with the fact that the district court properly dismissed

14

Plaintiffs' federal claims that served as the basis of the court's original jurisdiction, *see supra* Part II.A, these two bases provided an adequate basis for the district court to exercise its discretion to decline to retain jurisdiction over Plaintiffs' state-law claims, *see Farlow v. Wachovia Bank of N.C., N.A.*, 259 F.3d 309, 316–17 (4th Cir. 2001) (discussing district court's discretion to dismiss pendant state-law claims without prejudice after resolving all federal claims in defendant's favor); *see also Smith*, 409 F. App'x at 651 (finding no abuse of discretion in dismissal without prejudice of state tort claims upon dismissal of federal claims). However, because the district court declined to wade into the merits of Plaintiffs' state-law claims, dismissal of these claims should have been without prejudice. *See Farlow*, 259 F.3d at 316–17. Accordingly, we affirm the dismissal of Plaintiffs' state-law claims, but modify the district court's order to clarify that the dismissal is without prejudice.

### III.

For the foregoing reasons, the judgment of the district court is affirmed as modified to reflect that the dismissal of Plaintiffs' state-law claims is without prejudice.

*AFFIRMED AS MODIFIED*