**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2170

THE GREENVILLE COUNTY REPUBLICAN PARTY EXECUTIVE COMMITTEE,
a/k/a The Greenville County Republican Executive Committee;
WILLIAM MITCHELL, a/k/a Billy Mitchell,

Plaintiffs – Appellants,

and

THE SOUTH CAROLINA REPUBLICAN PARTY; BETTY S. POE, in her
official capacity as the Chairman of the Greenville County
Republican Party Executive Committee,

Plaintiffs,

v.

GREENVILLE COUNTY ELECTION COMMISSION; GREENVILLE COUNTY
BOARD OF REGISTRATION; BILLY WAY, JR., in his official
capacity as the Chairman of the South Carolina State
Election Commission,

Defendants – Appellees,

and

WAYNE GRIFFIN; REGINALD GRIFFIN; BRETT A. BURSEY; ALAN
OLSON; THE SOUTH CAROLINA INDEPENDENCE PARTY; THE SOUTH
CAROLINA CONSTITUTION PARTY; THE PROGRESSIVE NETWORK
EDUCATION FUND, INCORPORATED; THE COMMITTEE FOR A UNIFIED
INDEPENDENT PARTY, INCORPORATED, d/b/a
IndependentVoting.org; TERRY ALEXANDER, member of the Black
Legislative Caucus of the South Carolina House of
Representatives District 59; KARL B. ALLEN, member of the
Black Legislative Caucus of the South Carolina House of
Representatives District 25; JERRY N. GOVAN, JR., member of
the Black Legislative Caucus of the South Carolina House of
Representatives District 95; CHRIS HART, member of the
Black Legislative Caucus of the South Carolina House of

Representatives District 76; LEON HOWARD, member of the Black Legislative Caucus of the South Carolina House of Representatives District 76; JOSEPH JEFFERSON, JR., member of the Black Legislative Caucus of the South Carolina House of Representatives 102; JOHN RICHARD C. KING, member of the Black Legislative Caucus of the South Carolina House of Representatives District 49; DAVID J. MACK, III, member of the Black Legislative Caucus of the South Carolina House Representatives District 109; HAROLD MITCHELL, JR., member of the Black Legislative Caucus of the South Carolina House of Representatives District 31; JOSEPH NEAL, member of the Black Legislative Caucus of the South Carolina House of Representatives District 44; ANNE PARKS, member of the Black Legislative Caucus of the South Carolina House of Representatives District 12; RONNIE SABB, member of the Black Legislative Caucus of the South Carolina House of Representatives District 101; ROBERT WILLIAMS, member of the Black Legislative Caucus of the South Carolina House of Representatives District 62,

   Intervenor/Defendants – Appellees,

 and

CITY OF GREENVILLE MUNICIPAL ELECTION COMMISSION,

   Defendant,

 and

THE COLUMBIA TEA PARTY, INC.,

   Intervenor/Defendant.

---

Appeal from the United States District Court for the District of South Carolina, at Greenville.  J. Michelle Childs, District Judge; Mary G. Lewis, District Judge.  (6:10-cv-01407-JMC-MGL)

---

Argued:  October 29, 2014   Decided:  March 17, 2015

---

Before MOTZ, KING, and KEENAN, Circuit Judges.

---

2

Affirmed in part and dismissed in part by unpublished per curiam opinion.

---

**ARGUED:** Samuel Darryl Harms, III, HARMS LAW FIRM, PA, Greenville, South Carolina, for Appellants. Harry M. Kresky, LAW OFFICE OF HARRY KRESKY, New York, New York; Andrew Lindemann, DAVIDSON & LINDEMANN, PA, Columbia, South Carolina, for Appellees. **ON BRIEF:** Fletcher N. Smith, Jr., Greenville, South Carolina, for Appellees Terry Alexander, Karl B. Allen, Wayne Griffin, Reginald Griffin, Brett A. Bursey, Committee for a Unified Independent Party, Incorporated, Chris Hart, Leon Howard, Joseph Jefferson, Jr., John Richard C. King, David J. Mack, III, Harold Mitchell, Jr., Joseph Neal, Alan Olson, Anne Parks, Progressive Network Education Fund, Incorporated, Ronnie Sabb, South Carolina Independence Party, South Carolina Constitution Party, Robert Williams, and Jerry N. Govan, Jr.

---

Unpublished opinions are not binding precedent in this circuit.

3

PER CURIAM:

The Appellants — the Greenville County Republican Party Executive Committee (the "Committee") and William Mitchell — seek relief from the district court's rejection of their constitutional challenges to certain South Carolina election procedures. The Appellees — the Greenville County Election Commission (the "County Election Commission"), the Greenville County Board of Registration (the "Board"), and Billy Way, Jr., as Chairman of the South Carolina State Election Commission (the "State Election Commission") — urge us to sustain the decisions of the district court, which were predicated on lack of standing to sue and other grounds. See Greenville Cnty. Republican Party Exec. Comm. v. Way, No. 6:10-cv-01407 (D.S.C. Mar. 30, 2011), ECF No. 54 (the "First Opinion"); Greenville Cnty. Republican Party Exec. Comm. v. Way, No. 6:10-cv-01407 (D.S.C. Aug. 30, 2013), ECF No. 181 (the "Second Opinion").[1] Before we can reach

---

[1] There are several Intervenors in this appeal, including South Carolina voters, legislators, and entities that the district court authorized to intervene as defendants on March 3, 2011. They include Wayne Griffin, Reginald Griffin, Brett A. Bursey, Alan Olson, the South Carolina Independence Party, the South Carolina Constitution Party, the Progressive Network Education Fund, Incorporated, the Committee for a Unified Independent Party, Incorporated, Terry Alexander, Karl B. Allen, Jerry N. Govan, Jr., Chris Hart, Leon Howard, Joseph Jefferson, Jr., John Richard C. King, David J. Mack, III, Harold Mitchell, Jr., Joseph Neal, Anne Parks, Ronnie Sabb, and Robert Williams. The Appellees and Intervenors made joint submissions in this appeal, and their appellate contentions are thus the same. The
(Continued)

4

the merits of this appeal, we must address and resolve jurisdictional issues. First, we must determine whether the appeal is at least partially moot as a result of a municipal ordinance enacted in May 2014 by the City of Greenville (the "City").[2] Pursuant to the ordinance, the City no longer conducts its municipal elections by the partisan nomination procedures being challenged in this case. Second, we must decide whether the Appellants have standing to pursue any non-moot constitutional claims.

As explained below, the recently enacted ordinance renders this appeal substantially moot. With respect to the balance of their claims, the Appellants lack standing to sue. As a result, we affirm in part and dismiss in part.

I.

A.

1.

Under South Carolina law, municipalities must adopt by ordinance either a nonpartisan or a partisan method of

---

Columbia Tea Party, Inc., intervened as a defendant in the district court but is not a party to this appeal.

[2] The City is a municipality in Greenville County, South Carolina.

nominating candidates for public office in municipal elections. See S.C. Code Ann. § 5-15-60. In non-municipal elections, such candidates may be nominated by use of a partisan method. See id. § 7-11-10. In utilizing the partisan method, candidates for office are nominated through one of three possible procedures — a party primary, a party convention, or a petition. See id. §§ 5-15-60(3), 7-11-10.[3] The selection of which procedure to utilize is made by a certified political party — such as, in this case, the South Carolina Republican Party (the "State Party"). See, e.g., id. § 7-9-10; see also S.C. Libertarian Party v. S.C. State Election Comm'n, 757 S.E.2d 707, 708 (S.C. 2014).[4] The Committee — the primary Appellant here — is an

---

[3] Section 5-15-60 of the South Carolina Code provides, in pertinent part, that "[e]ach municipality in this State shall adopt by ordinance one of the following alternative methods of nominating candidates for and determining the results of its nonpartisan elections," including, inter alia, in section 5-15-60(1) "[t]he nonpartisan plurality method prescribed in [section] 5-15-61." Section 5-15-60(3) provides, in pertinent part, that "[i]f nonpartisan elections are not provided for, nomination of candidates for municipal offices may be by party primary, party convention or by petition." Meanwhile, section 7-11-10 — which applies to non-municipal elections — specifies that candidates may be nominated "by political party primary, by political party convention, or by petition." That provision was amended during the pendency of the proceedings in the district court, but the amendments have no bearing on this appeal. See Act of June 13, 2013, No. 61, § 1, 2013 S.C. Acts 244.

[4] Section 7-9-10 of the South Carolina Code explains that a political party "desiring to nominate candidates for offices to be voted on in a general or special election shall, before doing so, have applied . . . for certification as such." That
(Continued)

6

affiliate of the State Party and the Greenville County Republican Party, but it is not a certified political party. Accordingly, the Committee has no statutory authority to select one of the partisan nomination procedures.

If a certified political party designates a party primary as its preferred nomination procedure, South Carolina requires that it be an open primary (the "open primary system"). The open primary system authorizes all registered voters, regardless of their party affiliations, to vote in any party primary in South Carolina. See Drawdy v. S.C. Democratic Exec. Comm., 247 S.E.2d 806, 808 (S.C. 1978) ("Our election laws do not preclude a member of one political party from voting in . . . the primary . . . conducted by a different political party.").[5]

---

provision further explains methods of certification and that certified political parties have the authority to select the means by which their candidates will be nominated in partisan elections.

[5] No single provision of the South Carolina Code directly mandates the open primary system. Rather, that system arises from the interworking of several Code provisions. Persons who are citizens of South Carolina and the United States, and who satisfy specific age, residency, and registration requirements, are entitled to vote at all local municipal elections, see S.C. Code Ann. § 7-5-610, and all non-municipal party primaries, id. § 7-9-20, provided that those persons properly register, id. § 7-5-110. The State Election Commission must "establish and maintain a statewide voter registration database." Id. § 7-5-186(A)(1). With respect to party primaries, "[i]mmediately preceding" those elections, "the board of voter registration and elections" shall furnish "two official lists of voters . . . (Continued)

7

Alternatively, a certified political party may nominate its candidates for public offices by a party convention or by petition. In order to utilize the convention method, however, South Carolina requires a party to secure a three-fourths majority vote of the membership of the party's state convention (the "supermajority requirement"). See S.C. Code Ann. § 7-11-30.[6]

2.

Prior to May 2014, the City utilized the partisan method of nominating and electing candidates for its municipal elections.

_____

containing in each the names of all [voters] entitled to vote at each precinct." Id. § 7-5-420. Further, although nothing in the Code provides that a voter's political party affiliation bears on his right to vote in a given primary election, the Code does provide that "[n]o person shall be entitled to vote in more than one party primary election held the same day." Id. § 7-13-1040.

[6] Section 7-11-30 of the South Carolina Code contains requirements pertaining to partisan nominations by convention, and that Code provision has been amended twice since 2013. The version in effect during the events at issue provided that "[n]o convention shall make nominations for candidates for offices unless the decision to use the convention method is reached by a three-fourths vote of the total membership of the convention, except the office of state Senator and of member of the House of Representatives." See S.C. Code Ann. § 7-11-30 (2012). The two amended versions of section 7-11-30 — effective July 3, 2013 and June 2, 2014 — each retain the supermajority requirement, but further require that the convention nomination process be approved by a majority of voters in the party's next primary election. See Act of June 13, 2013, No. 61, § 3, 2013 S.C. Acts 246-47; Act of June 2, 2014, No. 196, § 6, 2014 S.C. Acts 2209-10.

Since the 1980s, the State Party has nominated its candidates for partisan municipal and county elections by the open primary system. As a result, the State Party could not nominate its candidates by convention unless it satisfied the supermajority requirement.

The Committee paid for and conducted the 2011 Republican municipal open primary in the City. In the past, the Committee has also paid for and conducted other such primaries.

### B.

### 1.

This appeal has a somewhat complicated procedural history, the relevant aspects of which are described below. On June 1, 2010, the Appellants, along with the State Party and Patrick Haddon, the Committee's then-Chairman (collectively, the "Original Plaintiffs") initiated this litigation in the District of South Carolina. Their complaint was lodged against the State of South Carolina and John Hudgens, in his official capacity as Chairman of the State Election Commission (together, the "Original Defendants").[7] The complaint challenged the constitutionality of South Carolina's open primary system, as

---

[7] Appellee Way replaced Original Defendant Hudgens as Chairman of the State Election Commission in May 2013. As a result, Way became a party-defendant in this litigation. See Fed. R. Civ. P. 25(d).

9

well as its supermajority requirement for use of a party convention. More specifically, the complaint alleged that those procedures, facially and as-applied, contravene the First and Fourteenth Amendments.[8]

By its First Amendment contentions, the complaint maintained that South Carolina's open primary system and supermajority requirement, facially and as-applied, contravene the Committee's right to freedom of association in two respects. First, the open primary system unconstitutionally requires the Committee to pay for and certify the results of partisan municipal primaries in which registered Democrats participate. Second, as to county elections, the supermajority requirement unconstitutionally regulates the internal processes of a certified political party in South Carolina by dictating the

---

[8] A facial constitutional challenge to a statute asserts either "that no set of circumstances exists under which the law would be valid" or that the statute "is overbroad because a substantial number of its applications are unconstitutional." Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 282 (4th Cir. 2013) (en banc) (alterations and internal quotation marks omitted). In assessing a facial challenge, a reviewing court must examine the "challenged law without regard to its impact on the plaintiff asserting the . . . challenge." Educ. Media Co. at Va. Tech, Inc. v. Insley, 731 F.3d 291, 298 n.5 (4th Cir. 2013) (internal quotation marks omitted). By contrast, an as-applied constitutional challenge contends that a statute has been unconstitutionally applied to the plaintiff. Id. at 301. That is, an as-applied challenge "is based on a developed factual record and the application of a statute to a specific person." Id. at 298 n.5 (internal quotation marks omitted).

10

vote percentage (three-fourths) requirement for the convention nomination procedure.

With respect to the Fourteenth Amendment, the complaint alleged that the open primary system and the supermajority requirement, facially and as-applied, contravene the Equal Protection Clause. Mitchell, who resides in the City, maintained that the open primary system violates his equal protection rights by compelling him to vote in partisan municipal elections conducted by a political party rather than by an election commission, such as that which conducts nonpartisan municipal elections. The Committee alleged that the supermajority requirement contravenes its equal protection rights by imposing more stringent requirements on a political party's use of the convention nomination procedure in county elections than other South Carolina statutes impose on nonpolitical organizations, such as churches and businesses. The complaint thus sought to enjoin the Original Defendants from using and enforcing the open primary system and the supermajority requirement in future municipal and county elections. The Committee also sought declaratory and monetary relief for violations of its First and Fourteenth Amendment rights in previous elections.

In February 2011, after discovery had been completed, the parties filed cross-motions for summary judgment with respect to

11

the facial constitutional challenges being pursued. On March 30, 2011, by its First Opinion, the district court awarded summary judgment to the Original Defendants on each of those facial challenges. More specifically, the court ruled that: (1) the open primary system does not facially violate a certified political party's freedom of association, as alternative partisan nomination procedures are available; (2) the supermajority requirement does not facially violate a certified political party's freedom of association, because it does not curtail the party's internal operations; and (3) the open primary system and the supermajority requirement do not facially contravene a certified political party's rights under the Equal Protection Clause, as those provisions do not discriminate among certified political parties. See First Opinion 15-22.[9]

2.

Nine months after the First Opinion, on January 6, 2012, the Original Plaintiffs filed an amended complaint in the district court, primarily to terminate and add certain

_____

[9] Subsequent to the First Opinion, on April 27, 2011, the Original Defendants sought Rule 59(e) relief, filing a motion in the district court to alter or amend judgment. That motion was denied on July 18, 2011.

defendants.[10] More than a year later, on June 7, 2013, the State Party, which had been an Original Plaintiff, filed a stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41 and withdrew from the litigation. As a result, the plaintiffs then in the case were the Committee, Mitchell, and Betty S. Poe, in her official capacity as the Committee's Chairman.[11] Poe did not appeal, and the Committee and Mitchell are the only plaintiffs (now Appellants) involved herein. The Appellees — the County Election Commission, the Board, and Way — are now the only non-intervening defendants.

In early July 2013, the Appellees sought summary judgment on the claims lodged against them in the amended complaint, arguing that the Appellants lack standing to sue with respect to their as-applied constitutional challenges. The Intervenors, on the other hand, filed a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), also arguing

---

[10] The amended complaint abandoned all claims against the State of South Carolina as a party-defendant. It named three new defendants, however — the County Election Commission, the Board, and the since-dismissed City of Greenville Municipal Election Commission. The only Appellee who has been a party-defendant over the entire course of the litigation is the Chairman of the State Election Commission (initially Hudgens and now Way).

[11] In May 2011, Original Plaintiff Haddon was replaced by Poe, the new Committee Chairman. Poe resigned during the pendency of this appeal, apparently leaving the Chairman seat vacant.

that the Appellants lacked standing to sue. On August 21, 2013, by its Second Opinion, the district court "dismisse[d] [the Appellants'] action for lack of standing" to sue. See Second Opinion 22.[12]

In its Second Opinion, the district court recognized that the Appellants bore the burden on the issue of standing to sue. The court then identified the applicable analysis for a standing issue, which, as established by the Supreme Court, required the Appellants to show that

> (1) [they have] suffered an "injury in fact" that is
> (a) concrete and particularized and (b) actual or
> imminent, not conjectural or hypothetical; (2) the
> injury is fairly traceable to the challenged action of
> the defendant; and (3) it is likely, as opposed to
> merely speculative, that the injury will be redressed
> by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000). Relying on our decision in Marshall v. Meadows, 105 F.3d 904, 906 (4th Cir. 1997), the

---

[12] The dismissal of a claim for lack of standing to sue is typically sought by way of Rule 12(b)(1) of the Federal Rules of Civil Procedure, which provides for dismissal for lack of subject-matter jurisdiction. In this instance, the district court's judgment order related that "Summary Judgment is granted on behalf of [the Appellees]." See Greenville Cnty. Republican Party Exec. Comm. v. Way, No. 6:10-cv-01407 (D.S.C. Sept. 6, 2013), ECF No. 182. The Second Opinion, on the other hand, specified that the action was dismissed for lack of standing. Notwithstanding this apparent discrepancy, we are satisfied that the disposition of the district court was a dismissal for lack of standing to sue. Indeed, there are no contentions to the contrary.

district court determined that the open primary system was not traceable to the Committee's alleged freedom of association injury. That injury, rather, was traceable solely to the State Party's decision to utilize the open primary system of selecting its nominees for public office. The court concluded that, because the State Party was not a party-defendant, the Committee could not satisfy the second, traceability prong of the standing analysis. The court also ruled that the Committee was unable to satisfy the third prong of that analysis, in that its alleged injury was not redressable. As the court explained, it could not, as a matter of law, compel the State Party to adopt and utilize any particular partisan nomination procedure.

The Second Opinion also rejected Mitchell's as-applied equal protection challenge to the open primary system for lack of standing to sue. In so ruling, the district court reasoned that Mitchell's alleged injuries were traceable solely to the City's decision to conduct partisan municipal elections. Accordingly, the absence of the City as a party-defendant deprived Mitchell of standing to pursue an equal protection claim.

Finally, the Second Opinion rejected — also for lack of standing to sue — the Committee's as-applied freedom of association and equal protection challenges to the supermajority requirement. In that regard, the district court explained that

15

the State Party — as the entity tasked with selecting the procedure by which the State Party selects its nominees for office in South Carolina — was the only entity entitled to challenge the constitutionality of the supermajority requirement.  The State Party, however, had abandoned the litigation two months earlier, in June 2013, and was no longer a party-plaintiff.  The court therefore dismissed the Appellants' as-applied constitutional challenges for lack of standing to sue.

Judgment was entered in favor of the Appellees on September 6, 2013.  The Appellants timely noticed this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

C.

On May 12, 2014, after this appeal was noticed and briefed, the City enacted the municipal ordinance that impacts our jurisdiction in this appeal.  See Greenville, S.C., Ordinance No. 2014-25 (2014) (the "Ordinance").  The Ordinance provides, in pertinent part, that the City "shall cease operating under the partisan method of nominating and electing candidates in municipal elections."  Id.  In place of the partisan method, the Ordinance "adopts the nonpartisan plurality [procedure]" prescribed by section 5-15-61 of the South Carolina Code.  Id. Accordingly, the City no longer conducts municipal elections

16

utilizing the partisan nomination procedures that are challenged by the Appellants.

During oral argument of this appeal, our panel identified the Ordinance as potentially creating a jurisdictional problem, in that the Ordinance may have mooted the Appellants' claims. As a result, we secured post-argument briefing from the parties on the jurisdictional impact of the Ordinance. The Appellees therein argued that the Ordinance renders moot each of the Appellants' constitutional claims with respect to future partisan municipal elections. The Appellants, by contrast, maintained that those claims were not mooted by the Ordinance, in that the City could yet again decide to utilize the partisan nomination procedures. Notwithstanding their disagreement in that respect, the Appellants and the Appellees appear to agree that the Ordinance does not moot the Committee's facial and as-applied freedom of association and equal protection challenges to the supermajority requirement, as those challenges apply to county — rather than municipal — elections. The parties also appear to agree that the Ordinance does not moot the Committee's claims for declaratory and monetary relief with respect to previous partisan municipal elections.

17

II.

When an issue of subject-matter jurisdiction arises, an appellate court is obliged to conduct a full inquiry thereon. See Dickens v. Aetna Life Ins. Co., 677 F.3d 228, 230 (4th Cir. 2012). We review de novo a district court's dismissal of a complaint for lack of standing to sue. See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 181 (4th Cir. 2013).

III.

The Appellants assert on appeal that the district court, by its First Opinion, erroneously awarded summary judgment to the Original Defendants on the facial constitutional challenges. The Appellants also contend that the court, by its Second Opinion, erred in ruling that the as-applied challenges are barred for lack of standing to sue. They further maintain, invoking the "repetition exception" to mootness, that the mootness doctrine does not undermine any of their claims in that the City could alter the Ordinance.

Because the Ordinance was enacted during the pendency of this appeal, we must assess whether its enactment impacts our jurisdiction by rendering any of the claims moot. Indeed, we are obliged to address both mootness and standing to sue prior to any merits questions. See Warren v. Sessoms & Rogers, P.A.,

18

676 F.3d 365, 370 (4th Cir. 2012) ("As a federal court, we must investigate the limits of our subject-matter jurisdiction whenever that jurisdiction is fairly in doubt." (internal quotation marks omitted)).

A.

1.

The doctrine of mootness derives from the requirement of Article III of the Constitution that "federal courts may adjudicate only [those] disputes involving 'a case or controversy.'" Williams v. Ozmint, 716 F.3d 801, 808 (4th Cir. 2013). The case or controversy mandate demands that plaintiffs in a federal lawsuit "continue to have a 'particularized, concrete stake' in the outcome of the case through all stages of litigation." Id. at 808-09 (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 479 (1990)). But when a party-plaintiff has already received "the relief he or she sought to obtain through the claim," the federal court lacks the power to provide "effective relief." Id. at 809 (internal quotation marks omitted). In such a situation, the claims of the plaintiff may well be moot.

In this case, the City's enactment of the Ordinance in May of last year has provided the Appellants with a substantial part of the relief they seek in this litigation. Specifically, the Ordinance adopted the nonpartisan method of nominating

19

candidates for municipal elections, thereby rendering inapplicable the open primary system that the Appellants seek to challenge on constitutional grounds. As explained below, the Appellants' facial and as-applied freedom of association and equal protection challenges, to the extent they relate to future partisan municipal elections, have been rendered moot, unless they are saved by the repetition exception argued by the Appellants.

2.

As the Appellants maintain, we have recognized an exception to the mootness doctrine for conduct "capable of repetition, yet evading review." Lux v. Judd, 651 F.3d 396, 401 (4th Cir. 2011). That exception might apply, for example, to an election-related dispute when "there is a reasonable expectation that the challenged provisions will be applied against the plaintiffs again during future election cycles." Id. (internal quotation marks omitted). The repetition exception is a narrow one, however, and it applies in exceptional situations only. See City of L.A. v. Lyons, 461 U.S. 95, 109 (1983). Thus, "a party seeking to invoke this exception to the mootness doctrine bears the burden of showing its application." Williams, 716 F.3d at 810.

In these circumstances, the Appellants have not satisfied their burden of establishing "a reasonable expectation" that the

20

City will return to the partisan method of nominating candidates in "future election cycles." See Lux, 651 F.3d at 401. Rather, their contention in that regard is predicated solely on speculation and conjecture. In enacting the Ordinance, the City explained its decision to shift from the partisan to the nonpartisan municipal nomination method. The Ordinance specified that "Greenville is one of only eight municipalities in South Carolina to have partisan municipal elections and the national trend is for municipalities the size of Greenville to have nonpartisan elections." See Greenville, S.C., Ordinance No. 2014-25 (2014). It also reasoned that the partisan method "results in a prolonged campaign period" and fails to "promote[] full participation by all voters in the electoral process." Id. (emphasis omitted). Because the Appellants have not shown a reasonable expectation that the City will return to the partisan municipal nomination method, the repetition exception is simply inapplicable.[13]

## B.

We recognize, however, that not all of the Committee's claims are mooted by the Ordinance. Specifically, the Committee's facial and as-applied freedom of association and

---

[13] As a consequence of the City's enactment of the Ordinance and our application of the mootness doctrine, Appellant Mitchell is left with no viable claims for relief in this case.

21

equal protection challenges to the supermajority requirement are not impacted by the Ordinance. Nor are the Committee's claims for declaratory and monetary relief for violations of its right to freedom of association in previous municipal open primaries. As to those claims, we turn to the Committee's central appellate contention with respect to the Second Opinion, that the district court erred in ruling that the Committee lacks standing to sue.

1.

By the First Opinion, the district court rejected the contentions of the then-plaintiffs that the open primary system and the supermajority requirement facially violated the First and Fourteenth Amendments. As reflected below, we are now satisfied — as was the district court in its Second Opinion — that the Appellants lack standing to pursue any facial or as-applied challenges to future partisan municipal elections. Nevertheless, the State Party had standing to pursue the facial challenges that were rejected by the First Opinion. The State Party, however, then abandoned the case and has not appealed. As to the First Opinion, we are being asked to vacate an appeal by parties (the Appellants) that have had no independent standing, either then or now. Because the Appellants lack standing to appeal, we cannot disturb the First Opinion. See Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 98-100 (4th Cir. 2011) (declining to review merits of denial of class

22

action certification where appellants subsequently dismissed related claims and thus lacked standing to pursue appeal).

2.

Next, the Committee pursues as-applied freedom of association and equal protection challenges with respect to the supermajority requirement. In its freedom of association argument, the Committee contends that the supermajority requirement unconstitutionally regulates a certified political party's internal processes by dictating that a three-fourths supermajority vote is required to alter a nomination procedure to a convention. The Committee then maintains that the supermajority requirement contravenes the Equal Protection Clause by requiring political parties to obtain a supermajority vote in order to utilize the convention nomination procedure, while the State permits other entities — such as churches and corporations — to make similar decisions by a simple majority. On those challenges, however, the Committee does not satisfy the first prong of the standing analysis, that is, a cognizable injury.

As the Second Opinion recognized, the injuries alleged by the Committee were actually suffered by another entity entirely — the State Party, which is solely tasked with selecting the partisan nomination procedure for Republican primaries. See Second Opinion 17. It is a "fundamental restriction on our

23

authority that in the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." Hollingsworth v. Perry, 133 S. Ct. 2652, 2663 (2013) (alterations and internal quotation marks omitted). The Committee has thus failed to show a cognizable injury under its First or Fourteenth Amendment contentions, and the Committee lacks standing to sue with regard to the supermajority requirement.

3.

Finally, the Committee seeks declaratory and monetary relief for violations of its right to freedom of association in previous partisan municipal elections. More specifically, the Committee contends that the open primary system unconstitutionally required the Committee to conduct and pay for those open primaries, in which registered Democrats participated.

In this situation, the Committee cannot satisfy the traceability prong of the standing analysis. In order to satisfy that prong, the Committee was obliged to show that its injury "fairly can be traced to the challenged action." Marshall v. Meadows, 105 F.3d 904, 906 (4th Cir. 1997) (internal quotation marks omitted). Here, the "challenged action" is South Carolina's open primary. In Marshall, we determined that

24

the plaintiffs lacked standing to challenge Virginia's open primary statutes, reasoning that

> it [was] not the Open Primary Law that [was] the cause of the plaintiffs' alleged injury. Rather, it [was] the decision of the Virginia Republican Party to conduct an "open" primary that [caused] this alleged injury, as there is: (1) nothing unconstitutional about a political party's choice of an "open" primary; and (2) simply no indication that the Virginia Republican Party would have a "closed" primary in the absence of the Open Primary Law.

Id. (emphasis and citations omitted). Accordingly, we ruled that the absence of the Virginia Republican Party as a party-defendant in Marshall deprived the plaintiffs of standing to sue. Id.

Here too, the Committee's alleged injuries were fairly traceable to the decision of the State Party to select its nominees by way of the open primary system. Thus, as the Second Opinion explained, the State Party is an intermediary that "'stands directly between [the Committee] and the challenged conduct in a way that breaks the causal chain'" between the open primary system and the Committee's freedom of association claims. See Second Opinion 17 (quoting Frank Krasner Enters., Ltd. v. Montgomery Cnty., Md., 401 F.3d 230, 236 (4th Cir. 2005)). Because the State Party is not a party-defendant in

25

this litigation, the Committee is unable to satisfy the traceability prong of the standing analysis.[14]

Contrary to the Committee's contention, our decision in Miller v. Brown, 462 F.3d 312 (4th Cir. 2006), does not dictate some other conclusion. In Miller, a local political organization contested the open primary system in Virginia that was challenged in Marshall. See Miller, 462 F.3d at 316. When Miller was decided, however, the Virginia Republican Party had already taken steps to implement its use of closed primaries. Id. at 318. Specifically, the Virginia Republican Party had amended its plan of organization to "exclude voters who participated in the nomination process of another party within the preceding five years from voting in the Republican primary." Id. at 314. In that circumstance, we concluded that the local political organization had standing to sue, because it was seeking to enforce the Virginia Republican Party's desire to

---

[14] We also agree with the Second Opinion that the Committee is unable to establish the redressability prong of the standing analysis. If South Carolina's open primary system is unconstitutional, we would likely be unable to compel the State Party to conduct closed primaries, as such a court order may well violate the Constitution. See Tashjian v. Republican Party of Conn., 479 U.S. 208, 224 (1986) (recognizing that a court "may not constitutionally substitute its own judgment for that of the [p]arty," as the "[p]arty's determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals, is protected by the Constitution") (internal quotation marks omitted)).

26

conduct closed primaries.  Id. at 318.  We readily distinguished that situation from the one in Marshall, where the Virginia Republican Party had not yet implemented its use of closed primaries.  Id.  Thus, the plaintiffs in Marshall were merely challenging the Party's desire to conduct open primaries, not the open primary system itself.  Id.

Miller is not applicable here because, unlike the Virginia Republican Party in Miller, the State Party has done nothing, on this record, that seeks to conduct closed primaries in South Carolina.  Accordingly, this situation more closely resembles that in Marshall, with the Committee challenging the State Party's decision to conduct open primaries.  Thus, the Committee lacks standing to pursue its claims for declaratory and monetary relief based on alleged constitutional violations in previous partisan municipal elections.[15]

IV.

Pursuant to the foregoing, we dismiss as moot the Appellants' facial and as-applied challenges to future partisan

---

[15] Finally, the Committee erroneously contends that the State Party's platform — vaguely indicating support for a closed primary system — is sufficient to establish standing for the Committee's freedom of association claims.  As recognized in the Second Opinion, however, the Party's platform "at most states a possible preference or partiality for [open] primaries . . . [which] is undoubtedly trumped by its rules and conduct."  See Second Opinion 21.

27

municipal elections.  We also dismiss, for lack of standing to sue, the facial challenges to the supermajority requirement. Finally, we affirm the dismissal, for lack of standing to sue, of the as-applied challenges to the supermajority requirement, as well as the claims for declaratory and monetary relief with respect to previous partisan municipal elections.

<u>AFFIRMED IN PART</u>
<u>AND DISMISSED IN PART</u>

28