**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-7346**

JAMES PAUL DESPER,

Plaintiff - Appellant,

v.

HAROLD CLARKE, Director of the Department of Corrections; A. DAVID
ROBINSON, Chief of Operations; JANE/JOHN DOE, for each member of the Sex
Offender Visitation Committee and the Sex Offender Program Director;
JANE/JOHN DOE, Corrections Operations Administrator; MARIA STRANSKY;
MARIE VARGO,

Defendants - Appellees.

Appeal from the United States District Court for the Western District of Virginia, at
Roanoke.  Glen E. Conrad, Senior District Judge.  (7:17-cv-00549-GEC-PMS)

Argued:  May 6, 2021                                          Decided:  June 15, 2021

Before NIEMEYER, FLOYD, and RUSHING, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Floyd
and Judge Rushing joined.

**ARGUED:**  Minahil Khan, GEORGETOWN UNIVERSITY LAW CENTER,
Washington, D.C., for Appellant.  Michelle Shane Kallen, OFFICE OF THE ATTORNEY
GENERAL OF VIRGINIA, for Richmond, Virginia, for Appellees.  **ON BRIEF:** Erica
Hashimoto, Director, Joshua Marcin, Supervising Attorney, Nicolas Sansone, Supervising
Attorney, John McGowan, Student Counsel, Appellate Litigation Program,

GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Mark R. Herring, Attorney General, K. Scott Miles, Deputy Attorney General, Margaret O'Shea, Assistant Attorney General, Toby J. Heytens, Solicitor General, Martine E. Cicconi, Deputy Solicitor General, Jessica Merry Samuels, Assistant Solicitor General, Kendall T. Burchard, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

NIEMEYER, Circuit Judge:

James Desper, a sex offender incarcerated at Augusta Correctional Center in Craigsville, Virginia, was twice denied in-person visitation privileges with his minor daughter, to whom we assign the fictional name "Emma." At the times when those privileges were denied, Emma was 10 and 11 years old, respectively. In his complaint filed under 42 U.S.C. § 1983, challenging the prison's decisions, Desper alleged that for years before 2015, he enjoyed in-person visits with Emma without incident. But consistent with amendments to prison Operating Procedures adopted in March 2014, Emma was removed from his in-person visitation list in 2015. As amended, Operating Procedure 851.1 prohibits those inmates required to register on Virginia's *Sex Offender and Crimes Against Minors Registry* from having in-person visits with minors unless the offender receives an exemption from prison officials.

Desper twice — in March 2016 and again in June 2017 — applied for but was denied an exemption for Emma's visits. Contending that the prison officials' denial violated his right to association under the First Amendment, as well as his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, he named as defendants numerous officials of the Virginia Department of Corrections (hereafter collectively, "VDOC") and sought a declaratory judgment, injunctive relief ordering the VDOC to allow him to visit with Emma, and punitive damages. The district court granted the VDOC's motion to dismiss, and we affirm.

3

I

On May 14, 2007, Desper and his wife took a 16-year-old girl to a residence, "proceeded to partially undress the child . . . and then [Desper] removed his penis from his pants and put it up against the 16-year-old's face." After the girl "resisted and screamed . . . another man from another room in the house came and made [Desper] and his wife stop what they were doing to the 16-year-old child." Desper thereafter pleaded guilty to taking indecent liberties with a child, in violation of Virginia Code § 18.2-370.1, and was sentenced to five years' imprisonment, three and one-half of which were suspended, and three years of supervised probation, subject to conditions. One of the conditions was that Desper not have unsupervised contact with any minor. The conviction triggered Desper's obligation to register as a sex offender in Virginia. *See* Va. Code Ann. § 9.1-902.

While on probation for that offense, Desper was convicted in 2009 of raping an 18-year-old girl who was mentally incapacitated, having an IQ of 60. For his conviction on three counts of rape, he was sentenced to 19 years' imprisonment, which he is now serving at Augusta Correctional Center.

Initially, Desper was allowed to receive visits from Emma, and these allegedly took place for six years without incident. But prison regulations were amended on March 1, 2014, to further regulate visitation privileges.

Included in the amendments that the VDOC adopted were amendments to Operating Procedure 851.1, which, as relevant, prohibit inmates with "any conviction requiring registration in the *Sex Offender and Crimes against Minors Registry*" from "visit[ing] with any minor until granted a sex offender visitation exemption." To obtain an exemption, an

4

eligible inmate and the parent or guardian of the minor are required to submit completed questionnaires to the inmate's "counselor," providing background information and explaining how the minor's visitation will benefit the minor. Under the procedure, the completed questionnaires are then forwarded to "an evaluator," who completes an assessment based on the inmate's history, actuarial data, and a "Mental Status Evaluation." The evaluator's assessment is then forwarded to the "Sex Offender Program Director," who presents it to the "Sex Offender Visitation Committee." That Committee makes a recommendation on the inmate's application for a visitation exemption and the "Corrections Operations Administrator" makes the final decision. A denial, however, is not permanent, as the inmate "can reapply [for an exemption] after one year."

Following adoption of the amendments to Operating Procedure 851.1, the VDOC removed Emma from Desper's approved visitor list "around December 2015." In accordance with the Operating Procedure, Desper applied for an exemption by submitting a completed "Sex Offender Minor Visitation Questionnaire" in March 2016. In explaining his prior sexual crimes on that form, he stated:

> In 2007 on my indecent liberties charge, I was just playing around with this girl who was 16 years old and she took it seriously. I had no intention of harming her. My current offense was with someone who was 18 years, of legal age. I was accused of raping her by use of her mental incapacity. Even though I was convicted all the evidence shows that I did not commit a crime. Her grade point average was higher than mine. So mentally me and this girl is the same.

And to explain the benefit of in-person visitations with Emma, he stated:

> For the child to maintain father/daughter relationship. For the child to know that she's loved. Also so I can participate in her care to help my mother make decisions regarding my daughter.

5

In early April 2016, Desper's mother, as guardian of Emma, also submitted a completed questionnaire, as required by the Operating Procedure. And "around April or May 2016," Desper was evaluated by a mental health professional.

When Desper had heard nothing further regarding his application, he wrote a letter to prison officials, dated January 7, 2017, to inquire as to its status. He received no response, but on February 24, 2017, Desper's mother was informed by email that the application for visitation rights had been denied, and his mother so informed Desper. She was also told that she could "re-submit evaluation forms after 6/10/2017." Despite repeated inquiries, neither Desper nor his mother was able to receive the reasons for the decision.

On June 10, 2017, Desper reinitiated the process for an exemption, and in August 2017, he was again evaluated by a mental health professional, who was different from the first. Desper was advised in September 2017 that "visitation [by Emma] was disapproved again." His mother later called the VDOC to request an explanation but, according to Desper's complaint, "[t]he person she talked to said that there was no specific reason why the visitation was disapproved."

In December 2017, Desper, acting pro se, commenced this action based on, as he alleged, "denial of his rights and privileges to visit with his daughter in violation of the Association Clause of the First Amendment," and the "due process and equal protection clause[s] of the Fourteenth Amendment." He requested a declaratory judgment that the VDOC had violated his constitutional rights, an injunction "ordering defendants to allow [him] to visit with his daughter," and punitive damages. Later, he filed a motion for

6

summary judgment and a motion for a preliminary injunction. The VDOC filed a motion to dismiss Desper's complaint, arguing that the VDOC's actions violated none of Desper's constitutional rights.

The district court granted the VDOC's motion to dismiss and denied Desper's motions for summary judgment and a preliminary injunction. In doing so, the court first expressed doubt that the First Amendment protected any right to visitation, citing *White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977), *aff'd*, 588 F.2d 913 (4th Cir. 1978) (per curiam); and *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam). But it held that even if the First Amendment did protect such a right, the VDOC's regulations passed muster under the four-factor test laid out in *Turner v. Safley*, 482 U.S. 78 (1987), and *Overton v. Bazzetta*, 539 U.S. 126 (2003). As for Desper's due process claim, the court held that neither the Due Process Clause nor the VDOC's regulations created a protected liberty interest in visitation. The court also explained that the visitation policy did not "impose[] an atypical and significant hardship on Desper compared to ordinary prison circumstances." Finally, the court held that Desper failed to state an equal protection claim because he had not adequately alleged that he was similarly situated to other individuals who had been granted exemptions.

From the district court's dismissal order dated January 29, 2019, and its order denying Desper's motion for reconsideration dated September 11, 2019, Desper filed this appeal. By order dated August 21, 2020, we appointed counsel to represent him.

7

## II

Desper contends first that the VDOC violated his "intimate familial association rights under the First Amendment by arbitrarily denying him visitation with [Emma]." He argues that a "fundamental aspect of [his] constitutionally protected right to freedom of association is 'the formation and preservation' of his relationship with [Emma], which 'by [its] nature, involve[s] deep attachments and commitments.'" (Quoting *Roberts v. U.S. Jaycees,* 468 U.S. 609, 618–20 (1984)). He notes that the Seventh, Ninth, and Tenth Circuits have recognized that the parent-child relationship continues to be constitutionally protected to some extent even after the parent is incarcerated, citing *Easterling v. Thurmer*, 880 F.3d 319, 323 & n.6 (7th Cir. 2018) (per curiam); *Dunn v. Castro*, 621 F.3d 1196, 1205 (9th Cir. 2010); and *Wirsching v. Colorado*, 360 F.3d 1191, 1201 (10th Cir. 2004). He urges us to follow this authority and recognize that "he holds a narrow First Amendment right to some opportunity to visit with his minor daughter, unless prison officials have a legitimate penological justification to deny all visitation." He then explains why in-person visits are crucial to maintaining his relationship with Emma, pointing to aspects of love, guidance, decisionmaking, and emotional, physical, and mental health.

The VDOC contends in response that the issue is narrower than that stated by Desper. It notes first that Desper did not allege that he faced a "complete denial" of visitation with Emma or that the VDOC indefinitely or arbitrarily denied him any rights. It understands the complaint to be alleging that "Desper did not receive an exemption after the mental health evaluations and that he was not told the precise reason why he was not selected for an exemption." It argues, therefore, that the issue presented is whether Desper

8

"has a constitutionally protected right to in-person visitation with his minor child," and on that issue, it claims that "no case[] establish[es] such a right." Indeed, it maintains that the courts of appeals, including this court, have rejected the argument "that prisoners have a constitutionally protected right to in-person visitation," citing *Oxendine*, 509 F.2d at 1407 (stating that a prison inmate "has no constitutional right to physical contact with his family"), *White*, 588 F.2d at 914 (affirming as "correct" the district court's decision, which had concluded that "there is no constitutional right to prison visitation, either for prisoners or visitors," 438 F. Supp. 110, 115 (D. Md. 1977)), and numerous unpublished decisions of this court.

While "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *Turner*, 482 U.S. at 84, they do severely curtail those protections. "The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Overton*, 539 U.S. at 131. Thus, "[a]n inmate does not retain rights inconsistent with proper incarceration." *Id.* And even those rights that *do* survive incarceration are afforded less protection by the Constitution than the rights of free citizens. As the Supreme Court held in *Turner*, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89; *see also Overton*, 539 U.S. at 132; *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

In this case, Desper did not allege that Operating Procedure 851.1 itself, which comprehensively regulates visitation, violated any right to association that may have survived his incarceration. And the issue here is not whether inmates generally have a

9

constitutional right to visitation. Indeed, as the complaint acknowledges, Operating Procedure 851.1 generally permits visitation. It provides:

> The DOC encourages visiting by family, friends, clergy, and other community representatives when visits do not pose a threat to others or violate any state or federal law. Offender visitation is a privilege, and the Facility Unit Head may restrict visiting privileges when necessary to ensure the security and good order of the facility.

But it does provide an exception, which is applicable here:

> Offenders with any conviction requiring registration in the *Sex Offender and Crimes against Minors Registry* will not be allowed to visit with any minor until granted a sex offender visitation exemption.

As to this exception, however, the Operating Procedure provides that if an exemption is denied, the inmate is allowed to reapply for an exemption "after one year." Critically, this restriction on visitation focuses on the fact that the inmate is a sex offender or committed a crime *against a minor* and that in-person visitation is sought with *a minor*. Moreover, regardless of whether the inmate receives an exemption, the Operating Procedure still gives the inmate opportunities to have contact with the minor by telephone or mail.

In view of the allegations of the complaint setting forth the provisions of Operating Procedure 851.1 and the allegations that Desper had been convicted of a sex offense that involved a minor, the issue before us is narrower than whether an inmate generally has a right to visitation under the Constitution. It can be fairly stated as whether the right of association protected by the Constitution requires a prison to allow an inmate who has committed a sex offense against a minor to have in-person visitation with his minor daughter.

While the relationship between parent and child is constitutionally protected by the Due Process Clause, *see, e.g., Quilloin v. Walcott*, 434 U.S. 246, 255 (1978), it may also, to some degree, be protected by the freedom of association found in the First Amendment, *see Roberts*, 468 U.S. at 619–20. Desper locates the right primarily in the First Amendment. It appears, however, that the Supreme Court's jurisprudence more naturally locates associations of an intimate and familial nature in the Fourteenth Amendment's protection of liberty. *Id.* at 618–23. But no matter the constitutional footing, the "freedom of association is among the rights least compatible with incarceration," *Overton*, 539 U.S. at 131, because "[t]he concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution," *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977). It is no surprise, therefore, that "[a]lthough the Supreme Court has considered issues concerning the visitation rights of prisoners in several cases," no case from that Court or our court "clearly establishes a constitutional right to visitation in prison grounded in the First . . . or Fourteenth Amendments." *Williams v. Ozmint*, 716 F.3d 801, 806 (4th Cir. 2013); *see also Oxendine*, 509 F.2d at 1407 (observing that an inmate "has no constitutional right to physical contact with his family"); *White*, 588 F.2d at 914 (finding the district court "correct" in concluding that "there is no constitutional right to prison visitation, either for prisoners or visitors," 438 F. Supp. at 115).

Given that there is no clearly established constitutional right to visitation in prison, we are ill-disposed to announce that a registered sex offender whose offense involved a minor possesses a right to in-person visitation with his minor child while incarcerated. This

11

purported aspect of the right to association seems directly "inconsistent with proper incarceration." *Overton*, 539 U.S. at 131. "The very object of imprisonment is confinement," *id.*, which not only punishes the offender by restricting his freedom, but also serves to deter others from committing crimes, protects society from dangerous individuals, and offers offenders a chance to rehabilitate themselves in a structured environment, *see, e.g.*, *Pell*, 417 U.S. at 822–23. Finding that a registered sex offender whose crime involved a minor can demand in-person visitation with his minor daughter cuts against most, if not all, of these goals and is in this sense "inconsistent with his status as a prisoner." *Id.* at 822. Indeed, Desper's own complaint highlighted this inconsistency, as it suggested that he had failed to recognize the impropriety of his sexual history, heightening the risk of inappropriate interaction or unsafe conduct with *any minor* during an in-person visit, as well as indicating that he has not been sufficiently rehabilitated to be trusted around minors. This is not to "imply[] that any right to" familial association "is altogether terminated by incarceration or is always irrelevant to claims made by prisoners." *Overton*, 539 U.S. at 131. But to find in the present context that this right "survives incarceration" to "the extent" Desper asserts would ignore the rationale for his confinement. *Id.* at 132.

Moreover, Desper did not allege in his complaint that the application of Operating Procedure 851.1 to him lacked "a *rational relation* to legitimate penological interests," as necessary to support his claim. *Overton*, 539 U.S. at 132 (emphasis added). As an inmate challenging the constitutionality of a prison regulation or action under that regulation, Desper carries the burden to "disprove" its validity. *Id.* Given the high bar of showing a

12

violation under the reasonableness standard, that burden is heavy.  In *Turner*, the Court

held that four factors are relevant to the inquiry:

> [1] whether the regulation has a "valid, rational connection" to a legitimate governmental interest;
>
> [2] whether alternative means are open to inmates to exercise the asserted right;
>
> [3] what impact an accommodation of the right would have on guards and inmates and prison resources; and
>
> [4] whether there are "ready alternatives" to the regulation.

*Overton*, 539 U.S. at 132 (quoting *Turner*, 482 U.S. at 89–91) (spaces added).  In addition,

courts must "accord substantial deference to the professional judgment of prison

administrators, who bear a significant responsibility for defining the legitimate goals of a

corrections system and for determining the most appropriate means to accomplish them."

*Id.*

Here, Desper alleged that Emma was removed from his approved visitor list in

December 2015 pursuant to Operating Procedure 851.1 and that, in March 2016, he

submitted an application for an exemption, which required him to explain his prior sexual

crimes.  About those crimes, Desper stated:

> In 2007 on my indecent liberties charge, *I was just playing around* with this girl who was 16 years old and she took it seriously.  I had no intention of harming her.  My current offense was with someone who was 18 years, of legal age.  I was accused of raping her by use of her mental incapacity.  Even though I was convicted all the evidence shows that *I did not commit a crime.* Her grade point average was higher than mine.  So *mentally me and this girl is the same*.

13

(Emphasis added). According to Desper's complaint, he was then evaluated by a mental health professional, and in June 2016, his request for an exemption was rejected, although he did not hear of that rejection until months later. Then in June 2017, Desper reinitiated the process. He was again evaluated by a mental health professional — different from the first — and again his application was rejected. Desper's mother later called the VDOC to request an explanation, and according to Desper's complaint, "[t]he person she talked to said that there was no specific reason why the visitation was disapproved."

These allegations are insufficient to allow us "to draw the reasonable inference that" the VDOC arbitrarily denied Desper visitation in a way that violated the associational right he asserts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even liberally construed, Desper's complaint is skeletal. He offered facts of what happened to him, but failed to allege adequately *why* that chain of events was not reasonably related to a legitimate penological objective, which, again, was his burden to allege under *Turner* and *Overton*. The closest he gets is his allegation that a prison official told his mother that "there was no specific reason why the visitation was disapproved." But even taking as true that this statement of an unspecified prison official was made, it is not enough to move Desper's complaint "from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This is especially so "in light of the 'obvious alternative explanation,'" *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 588 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 682), that he was denied visitation because in his application he failed to grasp the seriousness of his prior offenses and indicated an unwillingness to take responsibility for his criminal sexual history.

14

Desper sought to fill the gaps in his complaint by asserting conclusorily that the denials of his exemption requests were "for no legitimate reason." But that is just a legal conclusion, which is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Moreover, that legal conclusion runs counter to a commonsensical reading of Desper's complaint — that he was denied visitation with his minor daughter because of his failure to appreciate the gravity of his prior crimes against a 16-year-old girl and an 18-year-old woman. *See Iqbal*, 566 U.S. at 679 (allowing a court reviewing a complaint "to draw on its . . . common sense").

In sum, we conclude that Desper did not plausibly allege that the VDOC's denial of his applications for exemptions for in-person visitation with his minor daughter under Operating Procedure 851.1 violated any aspect of the right to association that may have survived incarceration.

III

Desper next contends that the VDOC's denial of his two applications for exemption denied him both his procedural and substantive due process rights, in violation of the Due Process Clause of the Fourteenth Amendment. That clause provides in relevant part, "No State shall . . . deprive any person of . . . liberty . . . without due process of law." U.S. Const. amend. XIV, § 1. Recognizing that he must, as an initial matter, identify the source of a protected liberty interest, he relies on the Due Process Clause itself and, alternatively, the allegedly mandatory aspects of the VDOC's visitation regulations. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (observing that "[a] liberty interest may arise from the

15

Constitution itself, by reasons of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies" (citations omitted)).

With respect to Desper's invocation of a liberty interest protected by the Due Process Clause, Desper relies upon case law defining a parent's interest in "the companionship, care, custody and management of his or her children." *Lassiter v. Dep't of Soc. Servs. of Durham Cnty.*, 452 U.S. 18, 27 (1981) (citation omitted). But cases such as *Lassiter* considered the parent-child relationship outside of the prison context, and Desper does not, as a duly incarcerated person, have the same liberty interest as one who is not incarcerated. *See Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009) ("A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man"). By its very nature, prison restricts an incarcerated father's interactions with his children. And restrictions placed on registered sex offenders — especially those whose offenses involved minor victims — may be all the more austere. *Cf. Smith v. Doe*, 538 U.S. 84, 104 (2003) (upholding a "State's determination to legislate with respect to convicted sex offenders as a class").

We therefore doubt that Desper has any protectable interest in visiting with a minor child. Most problematic for Desper in this regard is the Supreme Court's holding in *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989), where the Court held that "[t]he denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause," *id.* at 461 (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)); *see also  Williams*, 716 F.3d at 806 (rejecting the assertion that

16

an inmate has a "clearly establishe[d] . . . constitutional right to visitation in prison grounded in the . . . Fourteenth Amendment[]").

And, by any measure, Desper's own allegations demonstrate that he received sufficient process from the VDOC. The Operating Procedure required that he submit a questionnaire, wherein he had the opportunity to explain his criminal and sexual history and his reasons for seeking visitation. A similar form was also completed by Emma's guardian, Desper's mother, who would accompany Emma on any visit. Following the specified procedure, these questionnaires were reviewed by Desper's "assigned counselor" and then referred to an evaluator, who was charged with reviewing Desper's "personal/social/sexual history" and "actuarial assessment," as well as conducting a Mental Status Evaluation. The request, questionnaires, and completed evaluation were then shared with the "Facility Unit Head and the Sex Offender Program Director." Next, the multi-member Sex Offender Visitation Committee considered the full breadth of these materials and made a recommendation to the Corrections Operations Administrator, who considered the Committee's recommendation and made the final decision. Desper did not allege any deficiency in carrying out this multistep process with respect to either application for an exemption.

Moreover, the Operating Procedure 851.1 does not categorically deny prison visitation. It expressly guarantees an inmate's ability to "reapply after one year," a privilege that Desper exercised here, and does not limit the number of applications that an inmate may submit. Consequently, Desper has not suffered a permanent denial of visitation with his daughter. And the two denials do not foreclose Desper's ability to maintain his

17

father-daughter relationship with Emma through other means, as they can still communicate over the phone and through the mail. These methods similarly permit Desper to show Emma "that she's loved" and to "participate in her care to help [his] mother make decisions regarding [his] daughter." In short, we find no support for Desper's claim that the Constitution required any further consideration or action from the VDOC than Desper received.

Alternatively, Desper seeks to locate a protected liberty interest in Operating Procedure 851.1 itself. To do so, however, he must show that the Operating Procedure creates an "objective expectation" in the liberty interest "in such a way that an inmate could reasonably expect to enforce [it] against prison officials." *Thompson*, 490 U.S. at 465. That objective expectation can be created by "substantive predicates" that "guide" or "limit" official discretion and that use "explicitly mandatory language" such that "a particular outcome must follow" if those predicates are satisfied. *Id.* at 462–63 (cleaned up). Moreover, if the regulation is shown to be sufficiently mandatory, Desper would also have to show that deviating from that procedure "imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Prieto v. Clarke*, 780 F.3d 246, 248–57 (4th Cir. 2015). Satisfying these requirements is a difficult task, and intentionally so. *See Prieto*, 780 F.3d at 255.

Our review of Operating Procedure 851.1 leads us to conclude that its provisions do not confer a liberty interest on any inmate. First, it lacks the necessary substantive predicates that guide official discretion, as it treats visitation as "a privilege" and

18

establishes as a default policy for sex offenders that they "will *not* be allowed to visit with any minor *until* granted a sex offender visitation *exemption*." (Emphasis added). Moreover, the Operating Procedure does not specify "substantive predicates" in granting an exemption from the default policy, nor does it mandate an exemption in defined circumstances. In short, the Operating Procedure does not give a reasonable inmate an objective expectation that he would *be entitled* to visitation "absent the occurrence of one of the listed conditions." *Thompson*, 490 U.S. at 465.

Thus, we conclude that Desper has not plausibly alleged a procedural violation of the Due Process Clause as the process he received was adequate for any protectable liberty interest he may have had.

Additionally, Desper claims a substantive due process violation, which imposes yet a greater burden on him. He is required to show that the VDOC's denial of visitation "was, under the circumstances, so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hawkins v. Freeman*, 195 F.3d 732, 741 (4th Cir. 1999) (cleaned up). In the context of executive action such as that of the VDOC in following Operating Procedure 851.1, he must show that the violation involved "abusing executive power or employing it as an instrument of oppression." *Id.* (cleaned up). The conduct must go beyond "simple negligence" and "must be intended to injure in some way unjustifiable by any government interest." *Id.* (cleaned up). Clearly, these requirements create a "stringent test." *Id.*

Desper's complaint satisfies almost none of the requirements necessary to establish a substantive due process violation. In making this claim, he simply points to a VDOC

19

official's statement that there was "no specific reason" for the denial of his application for an exemption even though his daughter had visited him for six years without incident.[*] He argues further that this conduct was particularly egregious in view of the VDOC's dissimilar treatment of inmates whose visitations were suspended because of a visitation-related infraction or an escape-related offense. For those inmates, he claims, suspension could not exceed two years; yet he has been denied visitation with his daughter for well over two years while having no history of prison misbehavior. We conclude, however, that the VDOC's conduct in failing to provide Desper a reason was not so arbitrary and irrational as to rise to the level of a substantive due process violation. The oversight or even negligence in failing to give Desper reasons for the denial was not alleged to be an action that was "intended to injure" Desper in any way. *Hawkins*, 195 F.3d at 742. Indeed, the entire scenario as alleged in the complaint does not shock the conscience, the stringent test required to show a substantive due process violation.

IV

Finally, Desper contends that the VDOC, in denying him an exemption, treated him differently from other similarly situated inmates, in violation of the Equal Protection Clause. In asserting this claim, Desper alleged, without more, that he "was denied

---

[*] While we consider only Desper's complaint in reviewing the district court's dismissal order, the record in this case created in response to Desper's motion for summary judgment and motion for a preliminary injunction provides Desper with the reasons for denying his applications for an exemption. Moreover, the reasons were based on his mental health evaluations, which are maintained in his medical file and, as the VDOC has represented, are accordingly available to him at any time.

20

visitation with his daughter because he is a convicted sex offender, while other sex offenders get to visit with their minor children and, on information and belief[,] some have [a] similar or worse criminal history than Mr. Desper." In reviewing the district court's order granting the VDOC's motion to dismiss, we accept as true the allegation that other sex offenders with similar or worse *criminal histories* than Desper were granted an exemption allowing visitation with their minor children.

To state a claim for a violation of the Equal Protection Clause, "a plaintiff must plausibly allege first that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020) (cleaned up). He must also plausibly allege that "the disparity was not justified under the appropriate level of scrutiny," which, in the prison context, means that he "must allege that the disparate treatment was not reasonably related to any legitimate penological interests." *Id.* (cleaned up).

The complaint shows that Operating Procedure 851.1, which is attached to and incorporated into the complaint, prohibits registered sex offenders from visiting with minors. But it also allows for a discretionary exemption based on an assessment of, among other things, the inmate's "sexual history" and his current mental health. In furtherance of these criteria, as the complaint alleges, Desper underwent a mental status evaluation on two different occasions, and following both, the VDOC denied him an exemption to visit with Emma. While an inmate's criminal history or prison conduct, on which Desper based his equal protection claim, might be part of the inmate's assessment for an exemption — a

21

criterion not explicitly noted in Operating Procedure 851.1 — that two inmates have similar criminal histories and prison conduct does not suggest that they will receive the same decision under the Operating Procedure for visitation. The Operating Procedure appears to be more focused on an inmate's current mental status and sexual history, and with respect to those criteria, the complaint shows that Desper was unwilling to accept the criminality of his sexual conduct. Yet Desper's complaint does not purport to allege that he was treated differently from any other inmate *with a similar sexual history and mental status*. In short, he has not alleged that the VDOC "treat[ed] differently persons who are in *all relevant respects* alike." *Nordlinger v. Hahn*, 501 U.S. 1, 10 (1992) (emphasis added).

Desper asserts that he is unable to allege such facts because he lacks access to information about other inmates' sexual history and mental status absent discovery. But the Federal Rules of Civil Procedure "do not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (citing Fed. R. Civ. P. 8). "Insofar as [Desper] is unaware of adequate facts to support a plausible claim for relief, his inability to marshal additional facts absent discovery cannot save his conclusory and speculative allegations from dismissal." *Tickles v. Johnson*, 805 F. App'x 204, 208 (4th Cir. 2020) (per curiam). Accordingly, we agree with the district court that Desper failed to plead a plausible equal protection claim.

\* \* \*

The judgment of the district court dismissing Desper's complaint is

AFFIRMED.

22